IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMARR BILLMAN, | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| EASTON AREA SCHOOL DISTRICT, | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## COMPLAINT

Plaintiff JaMarr Billman ("Coach Billman"), by his attorneys, Broughal & DeVito, L.L.P., brings this Complaint against Defendant Easton Area School District ("EASD").

## NATURE OF ACTION

1. This is an action raising racial discrimination, racial harassment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq*. ("PHRA").

2. In keeping with EASD's history of discriminatory and racist conduct toward Black teachers, administrators, coaches and staff, Coach Billman was subjected to a barrage of racist and discriminatory conduct including his being fired because he is Black. His claims arise from that discriminatory and racist conduct.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Coach Billman's claims arise under federal law.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Coach Billman's state-law PHRA claims because they arise from the same events as Coach Billman's federal claims.

5. This Court is a proper venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Defendant resides in this district for venue purposes and a substantial part of the events giving rise to this cause of action occurred in this district.

## PROCEDURAL PREREQUISITES

6. Coach Billman dual-filed a Charge of Discrimination, No. 530-2019-05703, with the United States Equal Opportunity Employment Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on August 28, 2019.

7. On March 12, 2020, the EEOC issued Coach Billman a Notice of Rights to Sue; this action is filed within ninety (90) days of that Notice.

## FACTS

8. Coach Billman is a Black male who resides at 132 N. 11th Street, Allentown, Pennsylvania 18102.

9. Defendant EASD is a Pennsylvania school district centrally located in Easton, Pennsylvania with a business address of 1801 Bushkill Drive, Easton, Pennsylvania 18040.

10. Coach Billman worked as a wrestling coach for EASD's junior varsity wrestling team for the 2006/2007, 2007/2008, and 2008/2009 school years.

11. In June 2016, Coach Billman was hired by Defendant EASD as its head wrestling coach to coach its varsity wrestling team.

12. Defendant EASD's wrestling program has been regarded across Pennsylvania and the United States as a premier high school wrestling program that has won multiple state team and individual championships throughout the years.

13. Coach Billman worked continuously for Defendant EASD as its head wrestling coach from June 2016 through May 29, 2020 and did not have to reapply for this position during that time period.

## Defendant's Discriminatory Treatment Towards Coach Billman

14. Soon after Coach Billman was hired and repeatedly throughout Coach Billman's employment, Defendant EASD's Athletic Director, James Pokrivsak, Jr. ("Athletic Director Pokrivsak"), proudly identified himself as racist, and made a mockery of it.

15. Soon after Coach Billman was hired, Defendant EASD's Assistant Football Coach, Joe McIntyre ("Coach McIntyre"), who is White and the parent of an EASD wrestler, cornered Coach Billman and told Coach Billman that he has no respect for him.

16. Coach Billman reported his concerns of Coach McIntyre's harassment towards him to members of Defendant EASD's Administration.

17. Defendant EASD failed to investigate Coach Billman's reports.

18. Coach Billman was also given a limited budget, $300.00 over two (2) years, for a major wrestling program, while White coaches of other sports like football, received whatever budget they requested.

19. The prior wrestling coach, before Coach Billman, who was White, received a larger budget than Coach Billman, and was supported by Athletic Director Pokrivsak.

20. Whenever Coach Billman asked Athletic Director Pokrivsak to help pay for equipment for the wrestling program, Coach Billman is told "you don't need them."

21. EASD coaches of other sports, who were White, received much larger budgets and received the equipment that they requested for their respective sports.

22. Athletic Director Pokrivsak intentionally, and because of his racism, postponed scheduling major matches to dates they are normally scheduled in an effort to make Coach Billman look bad.

23. Athletic Director Pokrivsak did not delay scheduling of sporting events for other sports, where the coaches were White.

24. On information and belief, White coaches received pay in accordance with a rate schedule based on total years of service.

25. EASD did not compensate Coach Billman with a rate based on total years of service and intentionally excluded the years of service he had as a Junior Varsity wrestling coach because of his race.

26. On information and belief, White coaches received step pay increases every year.

27. Coach Billman did not receive a step pay increase for the 2019/2020 academic year because of his race.

28. On or about March 10, 2018, a wrestler failed to make weight at the PIAA State wrestling tournament. When Coach Billman notified the wrestler he would not be able to compete, the wrestler's grandfather came up to Coach Billman and attempted to choke Coach Billman by putting both hands around his neck and stated "I'll kill you ni\*\*\*r!"

29. Coach Billman immediately called Athletic Director Pokrivsak to inform him about the incident.

30. Despite Coach Billman's call, Athletic Director Pokrivsak was already aware of the incident, but never asked if Coach Billman was okay.

31. Days later, on March 14, 2018, Athletic Director Pokrivsak notified Coach Billman that his contract was not going to be renewed and that he was fired.

32. When Coach Billman asked Athletic Director Pokrivsak if he was being terminated for job performance, Athletic Director Pokrivsak notified him that Coach Billman's termination was not due to job performance and that he was doing a good job as coach of the wrestling program.

33. On March 16, 2018, two days after Coach Billman's notice of termination, one of Defendant EASD's Assistant Superintendents, Alyssa Emili ("Emili"), who is now also serving as the Director of Human Resources, attended a "Fire Billman Party," together with the wrestler who did not make weight, the wrestler's grandfather who had choked Coach Billman and called him a "ni***r", and his father.

34. On March 18, 2018, Coach Billman was informed that his contract would now be renewed by the Superintendent of Defendant EASD.

35. EASD Administrators do not attend parties promoting the firing of White coaches with the families of people who threaten and use racist epithets toward the coaches.

36. Athletic Director Pokrivsak treated all other coaches, who are White, in a much more favorable fashion than he treated Coach Billman.

37. On May 17, 2018, Coach Billman filed an Unlawful Harassment complaint through Defendant EASD's Human Resources Department.

38. Investigators within Human Resources substantiated Coach Billman's claims against Athletic Director Pokrivsak for comments mocking Coach Billman and tarnishing his reputation.

39. The investigators recommended numerous suggestions regarding all coaching staff, a majority of which were never implemented by Defendant EASD.

40. In August 2018, Coach Billman learned that Assistant Superintendent Emili and one of the parents, who later threatened Coach Billman, promoted a wrestling event, using the team's equipment and name, without notifying or involving Coach Billman or any of his assistant coaches.

41. EASD Administrators do not use team equipment of sports with White coaches, to run sporting events without the White coaches' knowledge and involvement.

42. When Coach Billman questioned why neither he nor his coaching staff was notified or included in the planning of this event, he was accused by Defendant EASD of trying to ruin a charity event.

43. On or about September 24, 2018, Coach Billman e-mailed Human Resources expressing concerns that Defendant EASD was actively working to undermine him in an effort to discredit him and sabotage the program.

44. Coach Billman further expressed concern that nothing had changed regarding Athletic Director Pokrivsak's treatment towards Coach Billman and the wrestling program and the impact the Athletic Director's conduct had on the team.

45. Specifically, Coach Billman expressed concern that Athletic Director Pokrivsak was now more hostile and retaliatory towards him than on previous occasions, including failing to respond to Coach Billman's emails, failing to follow guidelines from previous meetings, and failing to complete the wrestling schedule for the upcoming season.

46. A meeting was scheduled in October 2018 with Human Resources and EASD Administration regarding Coach Billman's concerns, but no changes resulted from the meeting.

47. In February 2019, Coach Billman continued to have White parents of certain White wrestlers complain and threaten him.

48. Coach Billman notified Athletic Director Pokrivsak of these threats and requested his help to stop them.

49. Defendant EASD, hired a plain clothes officer to accompany Coach Billman to one wrestling match on March 2, 2019 because of the threats Coach Billman received.

50. While at that match on March 2, 2019, Assistant Superintendent Emili, intentionally sat with the White parent who threatened Coach Billman, away from all the other Easton parents and the team.

51. Assistant Superintendent Emili's sitting with the White parent who threatened Coach Billman was an open show of support for the White parent against Coach Billman, despite the fact a plain clothes officer was necessary to protect Coach Billman from that parent.

52. Coach Billman complained to Defendant EASD of Assistant Superintendent Emili's conduct and asked how he would be protected if there were future threats by White parents.

53. Defendant EASD failed to provide protection to Coach Billman at subsequent matches and knowingly permitted White parents who physically threatened him to be present.

54. Despite claiming to investigate the threat against Coach Billman, Defendant EASD never informed Coach Billman of the outcome of the investigation or other policies that would be put in place to address Coach Billman's safety concerns.

55. Other coaches at EASD, who were White, received support from Athletic Director Pokrivsak when they addressed their concerns with parents to Defendant EASD.

56. On information and belief, Defendant EASD has policies, procedures, protocols and reports on how to deal with physical threats against teacher, coaches, and staff.

57. On information and belief, Defendant EASD did not follow its threat policies, procedures, protocols, and reports with the threats that were made by White parents to Coach Billman.

58. Defendant EASD did not adequately protect Coach Billman, or respond to his pleas for protection, because he is Black.

### Defendant EASD's Forced Coach Billman's Supervisor to Retract Her Written Observations of Coach Billman's Excellent Performance

59. In September 2019, Defendant EASD assigned Assistant Athletic Director Elaine Arnts ("Assistant Athletic Director Arnts") to be Coach Billman's supervisor in an alleged effort to address his continuous concerns about reporting to Athletic Director Pokrivsak.

60. Ms. Arnts regularly went to practices and reviewed the coaching work performed by Coach Billman.

61. From March 2019 until April 2020, Coach Billman never received any verbal or written warnings regarding his job performance.

62. In mid-March 2020, Coach Billman received his Notice of Right to Sue letter from EEOC.

63. On April 12, 2020, Ms. Arnts issued a favorable report of her observations of Coach Billman's performance to Athletic Director Pokrivsak as requested.

64. On April 17, 2020, Assistant Superintendent/Acting Director of Human Resources Emili, in a Zoom meeting with Athletic Director Pokrivsak and Ms. Arnts, informed Ms. Arnts that her written observations were totally inaccurate, and belittled Ms. Arnts for 40 minutes as a result of her favorable observations of Coach Billman's performance.

65. Neither Assistant Superintendent/Acting Director of Human Resources Emili nor Athletic Director Pokrivsak visited a single wrestling team practice from September 2019 through the dressing down Zoom meeting with Ms. Arnts.

66. On April 18, 2020, Athletic Director sent an email to Ms. Arnts directing her to retract her favorable written observations.

67. On April 19, 2020, Ms. Arnts informed the President of EASD's Board that she felt frightened, threatened and feared retaliation with the loss of her job by Mr. Pokrivsak and Ms. Emili if she did not change her original assessment and evaluation of Mr. Billman.

68. The President of EASD's Board did nothing to allay Ms. Arnts's concerns.

69. Feeling pressure from Defendant EASD's Administration, on April 20, 2020, Assistant Athletic Director Arnts amended her notes and provided an updated report to Athletic Director Pokrivsak that complied with Ms. Emili's demands.

70. On May 6, 2020, Coach Billman received his yearly performance review from Athletic Director Pokrivsak. Coach Billman scored 56 out of 96 points which was 30 points lower than his last evaluation and substantially lower than any previous evaluation he had ever received.

71. None of the favorable observations from Ms. Arnts's original written observations were included in the performance review.

## Defendant EASD Fires Coach Billman

72. In mid-May, 2020, counsel for Coach Billman reached out to counsel for Defendant EASD to see if Defendant EASD had any interest in resolving Coach Billman's discrimination, harassment and retaliation claims before they were filed in court.

73. On May 29, 2020, Athletic Director Pokrivsak again terminated Coach Billman as the head wrestling coach for Defendant EASD.

74. When Coach Billman questioned Athletic Director Pokrivsak as to the basis of the termination, Athletic Director Pokrivsak provided no reason other than it a collective decision by EASD's administration.

75. Defendant EASD's failure to provide a reason for Coach Billman's termination demonstrates its discriminatory animus against Coach Billman because he is Black.

76. Defendant EASD forced Assistant Athletic Director Arnts to retract and change her favorable written observations of Coach Billman in an effort to discredit and tarnish his reputation to fabricate a rationale for his termination.

77. From the time Coach Billman was hired in 2016 to his second termination in May 2020, Defendant EASD engaged in a discriminatory and retaliatory course of conduct against Coach Billman because he is Black.

78. Defendant EASD continuously failed to apply its policies concerning complaints, threats, safety, protection of employees, investigations, and parent complaints, because Coach Billman is Black and he complained of discriminatory treatment.

79. Defendant EASD treats White coaches much more favorably than Coach Billman with regard to enforcement of its policies concerning complaints, threats, safety, protection of employees, investigations, and parent complaints.

80. Coach Billman's termination was retaliation for reporting Athletic Director Pokrivsak's discriminatory and racially harassing conduct towards him.

81. Coach Billman's termination was in retaliation for his filing a Charge with the EEOC and PHRC.

82. Coach Billman's termination was retaliation for notifying Defendant EASD of his intention to file a federal lawsuit against it.

## COUNT I
## DISCRIMINATION ON THE BASIS OF RACE UNDER TITLE VII AND PHRA

83. Coach Billman incorporates by reference paragraphs 1 through of 82 of this Complaint as if set forth fully here.

84. Coach Billman is a Black male.

85. Coach Billman was qualified for his position as the head wrestling coach as he was hired by Defendant and worked in that capacity for nearly four (4) years after previously working as the Junior Varsity Wrestling coach for three years.

86. Coach Billman suffered adverse employment actions when:

   a. he was fired in March 2018 and then fired again on May 29, 2020;

   b. he was not paid a compensation rate based on total years of service as White coaches received;

   c. he did not receive a years of service increase for the 2019-2020 school year;

   d. Defendant EASD failed to apply or enforce its policies;

   e. Defendant EASD forced Ms. Arnts to retract and change her favorable written performance observations of Coach Billman.

87. As a result of Coach Billman's race, he received less favorable employment terms than similarly situated White coaches.

88. Coach Billman suffered damages as a result of the adverse employment actions by Defendant EASD.

WHEREFORE, Coach Billman requests that judgment be entered in his favor and against Defendant EASD and that he receive an award of back pay, front pay, punitive damages, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

## COUNT II
## HARASSMENT ON THE BASIS OF RACE UNDER TITLE VII AND PHRA

89. Coach Billman incorporates by reference paragraphs 1 through of 88 of this Complaint as if set forth fully here.

90. Defendant EASD is responsible for the actions of its administrators and Board members.

91. Coach Billman was subjected to a hostile work environment rife with racist comments, racist actions, racist discrimination, and retaliation by Defendant EASD's administration and Board.

92. The racial harassment was continuous, pervasive, and regular throughout his employment.

93. Coach Billman made multiple complaints to administration and Human Resources for Athletic Director Pokrivsak's, Coach McIntyre's and Ms. Emili's treatment towards him because of his race, to no avail.

94. Despite multiple reports of threats made by White parents of wrestlers on Coach Billman's team, Defendant EASD failed to provide adequate support and safety measures to Coach Billman.

95. Despite investigations and recommendations, Defendant EASD intentionally failed to implement and/or abide by suggested policies recommended to increase transparency and reduce the lack of support for Coach Billman.

96. By failing to implement any policies, Defendant EASD permitted Athletic Director Pokrivsak, Coach McIntyre, and Ms. Emili's discriminatory conduct towards Coach Billman to continue for over two (2) years.

97. Coach Billman suffered this racial harassment because he is Black.

98. The racial harassment exhibited by Defendant EASD, which created a hostile work environment, affected Coach Billman's ability to adequately coach the wrestling team.

99. The racial harassment, which was severe and pervasive, would detrimentally affect a reasonable person in the same position.

WHEREFORE, Coach Billman requests that judgment be entered in his favor and against Defendant EASD and that he receive an award of back pay, front pay, punitive damages, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

## COUNT III
## RETALIATION UNDER TITLE VII AND PHRA

100. Coach Billman incorporates by reference paragraphs 1 through 99 of this Complaint as if set forth fully here.

101. Coach Billman made numerous complaints to Athletic Director Pokrivsak, as well as to Defendant EASD's Human Resources Department regarding racial discrimination.

102. Each of Coach Billman's complaints related to discriminatory conduct by Defendant EASD administrators.

103. Coach Billman's complaints are protected activities under Title VII and the PHRA.

104. Defendant EASD failed to adequately investigate Coach Billman's complaints of discriminatory conduct.

105. Defendant EASD was aware that Coach Billman filed a Charge with EEOC and PHRC.

106. In mid-March, 2020, Defendant EASD was aware that Coach Billman intended to file a federal lawsuit against him related to the discriminatory treatment towards him by Defendant.

107. As a result of Coach Billman's complaints to Human Resources and a potential lawsuit, in mid-April 2020, Defendant EASD required administrators to alter Coach Billman's performance review as a basis to terminate his employment.

108. On May 29, 2020, Defendant EASD terminated Coach Billman's employment without providing any reason.

109. Coach Billman's termination was a direct result of his complaint to Defendant EASD of racial discrimination towards him and his forthcoming federal lawsuit.

110. No other White coaches were terminated based on complaints to Defendant.

WHEREFORE, Coach Billman requests that judgment be entered in his favor and against Defendant EASD and that he receive an award of back pay, front pay, punitive damages, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

## COUNT IV
## VIOLATION OF 42 U.S.C. § 1981

111. Coach Billman incorporates by reference paragraphs 1 through 110 of this Complaint as if set forth fully here.

112. Coach Billman, as a Black male, was discriminated against by Defendant EASD because of his race, subjected to a severe and pervasive discriminatory conduct creating a hostile work environment by Defendant EASD, and retaliated against by Defendant EASD for making complaints of racial discrimination and exercising his right to sue for discriminatory treatment.

113. Defendant EASD's conduct, as previously stated, violates Coach Billman's federal civil rights as guaranteed in 42 U.S.C. § 1981, which prohibits such conduct.

114. Coach Billman suffered damages as a result of Defendant EASD's intentional discriminatory conduct.

WHEREFORE, Coach Billman requests that judgment be entered in his favor and against Defendant EASD and that he receive an award of back pay, front pay, punitive damages, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

## JURY TRIAL DEMAND

115. Coach Billman demands a trial by jury on all claims and issues so triable.

**BROUGHAL & DeVITO, L.L.P.**

Dated:   06/10/2020     By: _____
**JOHN S. HARRISON, ESQUIRE**
Attorney I.D. No. 53864
**ERIKA A. FARKAS, ESQUIRE**
Attorney I.D. No. 313686
38 West Market Street
Bethlehem, PA 18018
Telephone No.:  (610) 865-3664
Facsimile No.:  (610) 865-0969
*Attorneys for Plaintiff*