## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMARR BILLMAN,** | : | |
| **Plaintiff,** | : | **Civil Action No.: 5:20-cv-02730** |
| | : | |
| **v.** | : | |
| | : | |
| **EASTON AREA SCHOOL DISTRICT,** | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : | |

### BRIEF IN SUPPORT OF MOTION TO DISMISS PORTIONS OF COMPLAINT PURSUANT TO Fed. R. CIV. P. 12(b)(6), OR, IN THE ALTERNATIVE, MOTION TO STRIKE PURSUANT TO Fed. R. CIV. P. 12(f)

Defendant, Easton Area School District, by and through its undersigned counsel, Marshall Dennehey, files this Brief in Support of Motion to Dismiss Portions of Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, Motion to Strike Pursuant to Fed. R. Civ. P. 12(f), respectfully requesting that this Honorable Court, upon consideration thereof in conjunction with its' motion, grant Easton's motion and dismiss or strike the portions of the Complaint requested.

*Standard of Review*

When deciding a motion to dismiss pursuant to Rule 12(b)(6), this Court must take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as a court is not " 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Wood v. Moss*, 572 U.S. 744, 755 n. 5 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," *Fed. R. Civ. P. 8(a)(2)*, which gives the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*,

355 U.S. 41, 47 (1957)). The complaint must contain " 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.' " *Warren Gen. Hosp.*, 643 F.3d at 84 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In the end, a court will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient " 'to raise a right to relief above the speculative level.' " *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555) (add'l citation omitted).

## Statement of Questions Involved

A.    Must Count IV for alleged violation of 42 U.S.C. § 1981 be dismissed when individuals cannot bring § 1981 suits against their government employers?

Suggested Answer:    Yes.

B.    Must Plaintiff's claims for punitive damages be dismissed or stricken when such damages are unavailable against municipalities under Title VII and 42 U.S.C. § 1981 and punitive damages are not available under the PHRA?

Suggested Answer:    Yes.

C.    Must this Court dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, strike pursuant to Fed. R. Civ. P. 12(f), all of Billman's allegations set forth in support of Billman's PHRA and Title VII claims contained in paragraphs 28-46 of the Complaint when those allegations relate to alleged discriminatory acts for which judicial remedies under the PHRA and Title VII are time-barred?

2

Suggested Answer:     Yes.

*Procedural History*

On June 10, 2020, Plaintiff filed her Complaint. *See*, *ECF Doc. No.: 1* ("Complaint")*.* On June 26, 2020, Plaintiff filed a Waiver of Service with respect to EASD, indicating that the waiver was sent on June 11, 2020, and that responsive pleadings from Defendants are due on August 10, 2020. *See*, *ECF Doc. No.: 4*. As a result, this motion is timely filed, as it has been filed on or before August 10, 2020.

*Statement of Facts as Alleged in Complaint*

In relevant part, the Complaint asserts that EASD is a Pennsylvania school district centrally located in Easton, Pennsylvania, with a business address of 1801 Bushkill Drive, Easton, Pennsylvania 18040. *Complaint*, at ¶ 9. It is alleged that, in June 2016, Plaintiff Jamarr Billman was hired by EASD as its head wrestling coach to coach its varsity wrestling team. *Complaint*, at ¶ 11. The Complaint states that Billman worked continuously in that position from June 2016 through May 29, 2020. *Complaint*, at ¶ 13.

According to the Complaint, EASD engaged in discriminatory conduct toward Billman, offering the following in alleged support:

a.)      EASD's Athletic Director Pokrivsak "proudly identified himself as a racist, and made a mockery of it. *Complaint*, at ¶ 14;

b.)      When EASD's Assistant Football Coach McIntyre, who is White and the parent of an EASD wrestler, cornered Billman and told him that he lacked respect for him, and Billman reported his concerns of McIntyre's alleged "harassment towards him" to members of EASD's Administration, EASD failed to investigate Billman's reports. *Complaint*, at ¶¶ 15-17;

3

c.)     Billman's wrestling budget was not as large as had been provided to white

coaches, and he was not provided with requested equipment by Pokrivsak. *Complaint*, at ¶¶ 18-

21;

d.)     Athletic Director Pokrivsak intentionally, and because of his alleged racism,

postponed scheduling major matches on dates they are normally scheduled in an effort to make

Coach Billman look bad, when he has not delayed scheduling of sporting events for other sports

involving White coaches. *Complaint*, at ¶¶ 22-23;

e.)     Billman did not receive the pay to which he was allegedly entitled because his

years of service as a Junior Varsity wrestling coach were purportedly excluded from his overall

years of service "because of his race," and he did not receive a step pay increase for the

2019/2020 academic year "because of his race." *Complaint*, at ¶¶ 24-27;

f.)     EASD's Athletic Director Pokrivsak failed to ask Billman "if he was okay" and,

in fact, Billman's contract was not renewed after an incident in which the grandfather of a

wrestler who had been informed by Billman that he had failed to make weight at the PIAA state

wrestling tournament, attempted to choke Billman, allegedly stating "I'll kill you ni\*\*\*r!"

*Complaint*, at ¶¶ 28-36;

g.)     investigators within the Human Resources Department of EASD substantiated an

unlawful harassment complaint made by Billman against Pokrivsak for comments that allegedly

mocked Billman and tarnished his reputation but suggestions made by investigators were never

implemented by EASD. *Complaint*, at ¶¶ 37-39;

h.)     Billman was accused by EASD of trying to ruin a charity event put together by

Assistant Superintendent, Alyssa Emili, and one of the parents that promoted a wrestling event,

using the team's equipment and name, when he questioned why neither he nor any of his coaches
were notified. *Complaint*, at ¶¶ 40-42;

      i.)      On or about September 24, 2018, Billman e-mailed Human Resources expressing
concerns that EASD was actively working to undermine him in an effort to discredit him and
sabotage the program, expressing concern that nothing had changed regarding Pokrivsak's
treatment towards Billman and the wrestling program, and indicating that Pokrivsak failed to
respond to Billman's emails, failed to follow guidelines from previous meetings, and failed to
complete the wrestling schedule for the upcoming season, but Human Resources and EASD
Administration did not change anything. *Complaint*, at ¶¶ 43-46;

      j.)      In February 2019, Billman notified Pokrivsak that he continued to have White
parents of certain White wrestlers complain to and threaten him and requested help to stop them,
which EASD provided by hiring a plainclothes officer to accompany Billman to a wrestling
match on March 2, 2019. *Complaint*, at ¶¶ 47-49;

      k.)      At the wrestling match on March 2, 2019, Assistant Superintendent Emili,
intentionally sat with the White parent who threatened Billman, away from all the other Easton
parents and the team, making a show of support for that parent. *Complaint*, at ¶¶ 50-51;

      l.)      Billman complained to EASD about Emili's conduct and asked how he would be
protected if there were future threats by White parents but EASD did not support him (allegedly
because he is Black) and, contrary to its threat policies, procedures, and protocols, failed to
provide protection to Billman at subsequent matches, knowingly permitting White parents who
physically threatened him to be present there. *Complaint*, at ¶¶ 52-58;

      m.)      In April 2020, EASD forced Billman's Supervisor, Assistant Athletic Director
Elaine Arnts, to retract her written observations of Billman's allegedly excellent performance

between March 2019 and April 2020, and, on May 6, 2020, Billman received his yearly performance review from Athletic Director Pokrivsak, which was scored 30 points lower than his last evaluation and substantially lower than any previous evaluation he had ever received and did not include any of the favorable observations from Ms. Arnts' original written observations. *Complaint*, at ¶¶ 59-71; and

n.)     In mid-May 2020, counsel for Billman reached out to counsel for EASD to see if EASD had any interest in resolving Billman's discrimination, harassment, and retaliation claims before they were filed in court, but, on May 29, 2020, Pokrivsak again terminated Billman as the head wrestling coach for EASD, allegedly for no reason other than that it was a collective decision by EASD's administration. *Complaint*, at ¶¶ 72-74.

Based on the foregoing, Billman concludes that:

a.)     EASD's failure to provide a reason for Billman's termination demonstrates its discriminatory animus against Billman because he is Black;

b.)     EASD forced Arnts to retract and change her favorable written observations of Billman in an effort to discredit and tarnish his reputation to fabricate a rationale for his termination;

c.)     From the time Billman was hired in 2016 to his second termination in May 2020, EASD engaged in a discriminatory and retaliatory course of conduct against Billman because he is Black;

d.)     EASD continuously failed to apply its policies concerning complaints, threats, safety, protection of employees, investigations, and parent complaints, because Billman is Black and he complained of discriminatory treatment;

6

e.)       EASD treats White coaches much more favorably than Billman with regard to enforcement of its policies concerning complaints, threats, safety, protection of employees, investigations, and parent complaints;

f.)       Billman's termination was retaliation for reporting Pokrivsak's discriminatory and racially harassing conduct towards him;

g.)       Billman's termination was in retaliation for his filing a Charge with the EEOC and PHRC; and

h.)       Billman's termination was retaliation for notifying EASD of his intention to file a federal lawsuit against it.

*Complaint*, at ¶¶ 75-82.

As a result of the foregoing, Billman brings three counts under Title VII and the PHRA against EASD (Counts I-III). He brings Count I under Title VII and the PHRA for discrimination against Billman, alleging that, as a result of Billman's race, he received less favorable employment terms than similarly situated White coaches and suffered damages as a result of the following discrete adverse employment actions by EASD:

a.)       he was fired in March 2018 and then fired again on May 29, 2020;

b.)       he was not paid a compensation rate based on total years of service as White coaches received;

c.)       he did not receive a years of service increase for the 2019-2020 school year;

d.)       EASD failed to apply or enforce its policies; and

e.)       EASD forced Arnts to retract and change her favorable written performance observations of Billman.

*Complaint*, at ¶¶ 83-88.

He brings Count II under Title VII and the PHRA for harassment against Billman, alleging that, as a result of Billman's race, he was subjected to a hostile work environment rife with racist comments, racist actions, racist discrimination, and retaliation by EASD's administration and Board, contending that the following occurred:

a.)     Billman made multiple complaints to administration and human resources about Pokrivsak's, McIntyre's and Emili's treatment towards him because of his race, to no avail;

b.)     despite multiple reports of threats made by White parents of wrestlers on Billman's team, EASD failed to provide adequate support and safety measures to Billman;

c.)     despite investigations and recommendations, EASD intentionally failed to implement and/or abide by suggested policies recommended to increase transparency and reduce the lack of support for Billman; and

d.)     by failing to implement any policies, EASD permitted Pokrivsak, McIntyre, and Emili's discriminatory conduct towards Billman to continue for over two (2) years. *Complaint*, at ¶¶ 89-99.

Plaintiff brings Count III under Title VII and the PHRA for retaliation, alleging that Billman made numerous complaints to Pokrivsak, as well as EASD's Human Resources Department, regarding racial discrimination by EASD administrators, that Billman filed a Charge with EEOC and PHRC, and that, in mid-March, 2020, EASD was aware that Billman intended to file a federal lawsuit related to the alleged discriminatory treatment towards him by EASD, which caused EASD: a.) in mid-April 2020, to require administrators to alter Billman's performance review as a basis to terminate his employment; and b.) on May 29, 2020, to terminate Billman's employment without providing any reason. *Complaint*, at ¶¶ 100-110.

Finally, in Count IV, Billman brings a cause of action for alleged violation of 42 U.S.C. §
1981 (Count IV) related to his employment as wrestling coach with EASD. *Complaint*, at ¶¶ 111-
114. Therein, Billman alleges that, as a Black male, he was discriminated against by Defendant
EASD because of his race, subjected to a severe and pervasive discriminatory conduct creating a
hostile work environment by EASD, and retaliated against by EASD for making complaints of
racial discrimination and exercising his right to sue for discriminatory treatment. *Complaint*, at ¶
112. Billman contends that EASD's conduct violates Billman's federal civil rights "as guaranteed
in 42 U.S.C. § 1981." *Complaint*, at ¶ 113.

Under all four counts of the Complaint, Billman requests: "that judgment be entered in
his favor and against Defendant EASD and that he receive an award of back pay, front pay,
punitive damages, compensatory damages, attorney fees, and any other relief this Honorable
Court deems proper." *Complaint*, at pp. 12-15.

*Argument to Dismiss*

**A.    Count IV for alleged violation of 42 U.S.C. § 1981 must be dismissed when
individuals cannot bring § 1981 suits against their government employers.**

Billman's Count IV for alleged violation of 42 U.S.C. § 1981 must be dismissed.
Individuals cannot bring a Section 1981 cause of action against their government employers.

Section 1983 is the exclusive remedy for rights created under Section 1981. The Third
Circuit has held that "Congress, in promulgating § 1983 over a century ago, established that
section as the exclusive remedy for violations of § 1981 by state actors. Nothing in its subsequent
history, including amendments to the 1991 Act, changed that remedial scheme." *McGovern v.
City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009).[1] In other words, "while § 1981 creates

---

[1] In *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), the U.S. Supreme Court held that § 1983 "provides the
exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed

rights, § 1983 provides the [exclusive] remedy to enforce those rights against state actors." *Id.* at 116.

Lower courts in this Circuit, and non-precedential opinions from the Third Circuit, continue to follow *McGovern* on this point. *See e.g. Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 556-557 (E.D. Pa. 2013); *Brodie v. Gloucester Twp.*, 2012 WL 295291, at *5 (D.N.J. Feb. 1, 2012); *Brown v. SEPTA*, 2013 WL 4804381, at *4 (3d Cir. Sept. 10, 2013). Eight circuits (the First, Third, Sixth, Seventh, Tenth, Fifth, Eleventh, and Fourth) agree that, under the existing statutory framework and Supreme Court jurisprudence, individuals cannot bring § 1981 suits against their government employers. *See McGovern*, 554 F.3d at 120-121 (3d Cir. 2009); *Buntin v. City of Boston*, 857 F.3d 69, 72-73 (1st Cir. 2017); *see also Campbell v. Forest Preserve Dist. of Cook County, Ill.*, 752 F.3d 665, 671 (7th Cir. 2014) ("We now join the overwhelming weight of authority and hold that . . . § 1983 remains the exclusive remedy for violations of § 1981 committed by state actors."). Consequently, EASD respectfully submits that this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6), must dismiss Count IV of the Complaint against EASD for alleged violation of 42 U.S.C. § 1981.

**B.      Punitive Damages under Title VII, the PHRA, and 42 U.S.C. § 1981 must be dismissed or stricken when such damages are unavailable against municipalities under Title VII and Section 1981 and punitive damages are not available under the PHRA.**

Billman's claims for punitive damages under Title VII, the PHRA, and 42 U.S.C. § 1981 must be dismissed or stricken. Punitive damages are unavailable against municipalities under Title VII and Section 1981. They are also unavailable under the PHRA.

---

against a state actor." *Jett*, 491 U.S. at 735. *McGovern* held that the 1991 amendments to 42 U.S.C. § 1981 did not disturb the *Jett* decision. *McGovern*, 554 F.3d at 121.

Public school districts are considered municipal entities within the rule that punitive damages are not recoverable against municipalities or municipal subdivisions under federal law. "[W]hen the employer is a municipality, punitive damages are not available under Title VII." *Udujih v. City of Phila.*, 513 F.Supp.2d 350, 358 (E.D. Pa. 2007). Similarly, punitive damages are unavailable under Section 1981 (or 42 U.S.C. § 1983) against a municipality like the EASD. *See 42 U.S.C. § 1981a (b)(1)* ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if . . . ."); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under § 1983."). Finally, "punitive damages are not available under the PHRA." *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 570, n. 3 (3d Cir. 2002).

As a result, EASD this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6), must dismiss all claims for punitive damages against EASD in this matter. In the alternative, pursuant to Fed. R. Civ. P. 12(f), all claims for punitive damages must be stricken.[2]

**C.      This Court must dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, strike pursuant to Fed. R. Civ. P. 12(f), all of Billman's allegations set forth in support of Billman's PHRA and Title VII claims contained in paragraphs 28-46 of the Complaint when those allegations relate to alleged discriminatory acts for which judicial remedies under the PHRA and Title VII are time-barred.**

This Court must dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, strike pursuant to Fed. R. Civ. P. 12(f), all of Billman's allegations set forth in support of Billman's

---

[2] EASD makes this request to strike in the alternative. Under Rule 12(f), "[a] court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Fed. R. Civ. P. 12(f)*. "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa. 2002) (Rufe, J.). The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J. 2002). As punitive damages are not recoverable against EASD under the causes of action alleged, Billman's claims for those damages are immaterial to this matter.

PHRA and Title VII claims contained in paragraphs 28-46 of the Complaint. Those allegations relate to alleged discriminatory acts for which judicial remedies under the PHRA and Title VII are time-barred, as those alleged discriminatory acts occurred more than 300 days before Billman dual-filed a Charge of Discrimination, No. 530-2019-05703, with the EEOC and the PHRC on August 28, 2019. *Complaint*, at ¶ 6.

Counts I-III of the Complaint assert violations of Title VII and the PHRA, based upon alleged discrimination, retaliation, and harassment of Billman on the basis of race by EASD and its' employees and representatives. Before filing suit under Title VII and the PHRA, Billman had to timely exhaust each statute's administrative remedies. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 926-927 (3d Cir. 1997); *see also Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (holding, in Title VII case, that a plaintiff must exhaust administrative remedies prior to bringing suit in court); *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 921 (Pa. 1989) (holding that the intended forum for initially addressing PHRA claims is the PHRC); *Bailey v. Storlazzi*, 729 A.2d 1206, 1214 (Pa. Super. 1999) (holding that a plaintiff must exhaust administrative remedies under PHRA prior to bringing case to court).

The PHRA requires that any administrative complaint be filed within 180 days of the alleged act of discrimination. *See 43 P.S. § 959(h)*. Under Title VII, the relevant term is 300 days. *See 42 U.S.C. § 2000e–5(e)*. Therefore, any events occurring prior to November 1, 2018, are barred from consideration under the Title VII claim, and any events occurring prior to February 28, 2019, may not be considered under the PHRA claim. Any acts that occurred prior to those respective dates are barred from consideration. *Mikula v. Allegheny Cnty. of Pa.*, 583 F.3d 181, 183 (3d Cir. 2009).

In other words, if a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA. *Woodson*, 109 F.3d at 925. Pennsylvania courts have strictly interpreted this time requirement, and have repeatedly held that "persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act." *Id.* (citing *Vincent v. Fuller Co.*, 616 A.2d 969, 974 (Pa. 1992)). Likewise, if a plaintiff fails to file a timely complaint with the EEOC, then he or she is precluded from judicial remedies under Title VII. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-110  (2002) (to file a suit under Title VII, a plaintiff must file a charge with the EEOC within 300 days of the complained of action or the suit is time-barred).

The Complaint states that "Billman dual-filed a Charge of Discrimination, No. 530-2019-05703, with the United States Equal Opportunity Employment Commission ('EEOC') and the Pennsylvania Human Relations Commission ('PHRC') on August 28, 2019." *Complaint*, at ¶ 6. Yet Billman makes numerous assertions relating to alleged conduct engaged in by EASD and its personnel that occurred more than 180 days and more than 300 days before August 28, 2019.

Billman takes issue with allegedly discriminatory behavior stated to have occurred between March 10, 2018 and October 2018. *See Complaint*, at ¶¶ 28-46. That behavior is alleged to have included at least the following alleged discriminatory acts:

a.)     EASD's Athletic Director Pokrivsak failed to ask Billman "if he was okay" and, in fact, Billman's contract was not renewed after an incident in which the grandfather of a wrestler who had been informed by Billman that he had failed to make weight at the PIAA state wrestling tournament, attempted to choke Billman, allegedly stating "I'll kill you ni***r!" *Complaint*, at ¶¶ 28-36;

b.)      investigators within the Human Resources Department of EASD substantiated an unlawful harassment complaint made by Billman against Pokrivsak for comments that allegedly mocked Billman and tarnished his reputation but suggestions made by investigators were never implemented by EASD. *Complaint*, at ¶¶ 37-39;

c.)      Billman was accused by EASD of trying to ruin a charity event put together by Assistant Superintendent, Alyssa Emili, and one of the parents that promoted a wrestling event, using the team's equipment and name, when he questioned why neither he nor any of his coaches were notified. *Complaint*, at ¶¶ 40-42; and

d.)      On or about September 24, 2018, Billman e-mailed Human Resources expressing concerns that EASD was actively working to undermine him in an effort to discredit him and sabotage the program, expressing concern that nothing had changed regarding Pokrivsak's treatment towards Billman and the wrestling program, and indicating that Pokrivsak failed to respond to Billman's emails, failed to follow guidelines from previous meetings, and failed to complete the wrestling schedule for the upcoming season, but Human Resources and EASD Administration did not change anything. *Complaint*, at ¶¶ 43-46.

In calculating whether judicial remedies for these acts are precluded, 180 days before August 28, 2019, is March 1, 2019. And 300 days before August 28, 2019 is November 1, 2018.

Therefore, said alleged conduct cannot support either a PHRA claim or Title VII claim, as the challenged conduct is barred by Title VII's and the PHRA's limitation periods. *Clarkson v. SEPTA*, 700 F. App'x 111, 114 (3d Cir. 2017). Pursuant to Fed. R. Civ. P. 12(b)(6), this Court should dismiss, or in the alternative, strike pursuant to Fed. R. Civ. P. 12(f), all of Billman's allegations set forth in support of Billman's PHRA and Title VII claims contained in paragraphs 28-46 of the Complaint.

*Conclusion*

For all of the foregoing reasons, EASD's motion to dismiss, or, in the alternative, motion to strike, must be granted.

Respectfully submitted,

**MARSHALL DENNEHEY**

*Attorneys for Defendant, Easton Area School District*

By:     *s/Sharon M. O'Donnell*
        Sharon M. O' Donnell
        Pennsylvania Bar I.D. No.: 79457
        100 Corporate Center Drive, Suite 201
        Camp Hill, PA  17011
        Ph.: (717) 651-3500
        Fax: (717) 651-3707
        Email: SMODonnell@mdwcg.com

Date:   August 10, 2020.

15

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

JAMARR BILLMAN,                          :
         Plaintiff,               :
                              :     NO. 20-cv-02730
         v.                       :
                              :     JURY TRIAL DEMANDED
EASTON AREA SCHOOL DISTRICT,             :
         Defendant.               :     FILED ELECTRONICALLY

## **CERTIFICATE OF SERVICE**

I, Sharon M. O'Donnell, Esquire, of Marshall Dennehey Warner Coleman & Goggin, do hereby certify that on this 10th day of August , 2020, I served a copy of the foregoing document, electronically, as follows:

John S. Harrison, Esquire
Erika A. Farkas, Esquire
Broughal & DeVito, LLP
38 West Market Street
Bethlehem, PA  18018

MARSHALL DENNEHEY

BY:   */s/Sharon M. O'Donnell*
        Sharon M. O'Donnell, Esquire
        PA I.D. No. 79457
        100 Corporate Center Dr., Suite 201
        Camp Hill, PA  17011
        (717) 651-3503  Fax (717) 651-3707
        smodonnell@mdwcg.com
        *Attorneys for Defendant, Easton Area School District*

16