**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMARR BILLMAN,** | : | |
| **Plaintiff,** | : | **Civil Action No.: 5:20-cv-02730** |
| | : | |
| **v.** | : | |
| | : | |
| **EASTON AREA SCHOOL DISTRICT,** | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : | |

<u>**BRIEF IN SUPPORT OF MOTION TO DISMISS PORTIONS OF AMENDED
COMPLAINT PURSUANT TO Fed. R. CIV. P. 12(b)(6) , OR, IN THE ALTERNATIVE,
MOTION TO STRIKE PURSUANT TO Fed. R. CIV. P. 12(f)**</u>

Defendant, Easton Area School District, by and through its undersigned counsel, Marshall Dennehey, files this Brief in Support of Motion to Dismiss Portions of Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, Motion to Strike Pursuant to Fed. R. Civ. P. 12(f). Upon consideration thereof, in conjunction with its motion, EASD respectfully requests that this Honorable Court grant this motion and dismiss or strike the portions of the Amended Complaint requested.

*Standard of Review*

When deciding a motion to dismiss pursuant to Rule 12(b)(6), this Court must take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as a court is not " 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Wood v. Moss*, 572 U.S. 744, 755 n. 5 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," *Fed. R. Civ. P. 8(a)(2)*, which gives the defendant " 'fair notice of what the ... claim is and the

grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must contain " 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.' " *Warren Gen. Hosp.*, 643 F.3d at 84 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In the end, a court will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient " 'to raise a right to relief above the speculative level.' " *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555) (add'l citation omitted).

### Statement of Question Involved

A.     Must this Court dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, strike pursuant to Fed. R. Civ. P. 12(f), all of Billman's allegations set forth in support of Billman's PHRA and Title VII claims contained in paragraphs 29-48, 91(a), and 99 of the Amended Complaint when those allegations relate to alleged discriminatory acts for which judicial remedies under the PHRA and Title VII are time-barred?

Suggested Answer:     Yes.

### Procedural History

On June 10, 2020, Plaintiff filed his Complaint. *See*, *ECF Doc. No.: 1* ("Complaint")*. On June 26, 2020, Plaintiff filed a Waiver of Service with respect to EASD, indicating that the

waiver was sent on June 11, 2020, and that responsive pleadings from Defendants were due on August 10, 2020. *See*, *ECF Doc. No.: 4*.

EASD timely filed a Motion to Dismiss the Complaint on August 10, 2020. *See*, *ECF Doc. No.: 9*. Plaintiff filed his Amended Complaint on August 24, 2020. *See*, *ECF Doc. No.: 10* ("Amended Complaint")*.* This motion to dismiss is timely filed, as it has been filed on or before September 7, 2020.

*Statement of Facts as Alleged in Amended Complaint*

In relevant part, the Amended Complaint asserts that EASD is a Pennsylvania school district centrally located in Easton, Pennsylvania, with a business address of 1801 Bushkill Drive, Easton, Pennsylvania 18040. *Amended Complaint*, at ¶ 9. It is alleged that, in June 2016, Plaintiff Jamarr Billman was hired by EASD as its head wrestling coach to coach its varsity wrestling team. *Amended Complaint*, at ¶ 12. The Complaint states that Billman worked continuously in that position from June 2016 through May 29, 2020. *Amended Complaint*, at ¶ 14.

According to the Complaint, EASD engaged in discriminatory conduct toward Billman, offering the following in alleged support:

a.)    EASD's Athletic Director Pokrivsak "proudly identified himself as a racist, and made a mockery of it. *Amended Complaint*, at ¶ 15;

b.)    When, soon after Billman was hired, EASD's Assistant Football Coach McIntyre, who is White and the parent of an EASD wrestler, cornered Billman and told him that he lacked respect for him, and Billman reported his concerns of McIntyre's alleged "harassment towards him" to members of EASD's Administration, EASD failed to investigate Billman's reports. *Amended Complaint*, at ¶¶ 16-18;

c.)      Billman's wrestling budget was not as large as had been provided to white coaches, and he was not provided with requested equipment by Pokrivsak. *Amended Complaint*, at ¶¶ 18-22;

d.)      Athletic Director Pokrivsak intentionally, and because of his alleged racism, postponed scheduling major matches on dates they are normally scheduled in an effort to make Coach Billman look bad, when he has not delayed scheduling of sporting events for other sports involving White coaches. *Amended Complaint*, at ¶¶ 23-24;

e.)      Billman did not receive the pay to which he was allegedly entitled because his years of service as a Junior Varsity wrestling coach were purportedly excluded from his overall years of service "because of his race," and he did not receive a step pay increase for the 2019/2020 academic year "because of his race." *Amended Complaint*, at ¶¶ 25-28;

f.)      EASD's Athletic Director Pokrivsak failed to ask Billman "if he was okay" and, in fact, Billman's contract was not renewed after an incident in which the grandfather of a wrestler who had been informed by Billman that he had failed to make weight at the PIAA state wrestling tournament, attempted to choke Billman, allegedly stating "I'll kill you ni***r!" *Amended Complaint*, at ¶¶ 29-37;

g.)      Investigators within the Human Resources Department of EASD substantiated an unlawful harassment complaint made by Billman against Pokrivsak for comments that allegedly mocked Billman and tarnished his reputation but the majority of suggestions made by investigators were never implemented by EASD. *Amended Complaint*, at ¶¶ 38-40;

h.)      Billman was accused by EASD of trying to ruin a charity event put together by Assistant Superintendent, Alyssa Emili, and one of the parents that promoted a wrestling event,

4

using the team's equipment and name, when he questioned why neither he nor any of his coaches were notified. *Amended Complaint*, at ¶¶ 41-44;

i.)     On or about September 24, 2018, Billman e-mailed Human Resources expressing concerns that EASD was actively working to undermine him in an effort to discredit him and sabotage the program, expressing concern that nothing had changed regarding Pokrivsak's treatment towards Billman and the wrestling program, and indicating that Pokrivsak failed to respond to Billman's emails, failed to follow guidelines from previous meetings, and failed to complete the wrestling schedule for the upcoming season, but Human Resources and EASD Administration did not change anything. *Amended Complaint*, at ¶¶ 45-48;

j.)     In February 2019, Billman notified Pokrivsak that he continued to have White parents of certain White wrestlers complain to and threaten him and requested help to stop them, which EASD provided by hiring a plainclothes officer to accompany Billman to a wrestling match on March 2, 2019. *Amended Complaint*, at ¶¶ 49-51;

k.)     At the wrestling match on March 2, 2019, Assistant Superintendent Emili, intentionally sat with the White parent who threatened Billman, away from all the other Easton parents and the team, making a show of support for that parent. *Amended Complaint*, at ¶¶ 52-53;

l.)     Billman complained to EASD about Emili's conduct and asked how he would be protected if there were future threats by White parents but EASD did not support him (allegedly because he is Black) and, contrary to its threat policies, procedures, and protocols, failed to provide protection to Billman at subsequent matches, knowingly permitting White parents who physically threatened him to be present there. *Amended Complaint*, at ¶¶ 54-60;

m.)     In April 2020, EASD forced Billman's Supervisor, Assistant Athletic Director Elaine Arnts, to retract her written observations of Billman's allegedly excellent performance

between March 2019 and April 2020, and, on May 6, 2020, Billman received his yearly performance review from Athletic Director Pokrivsak, which was scored 30 points lower than his last evaluation and substantially lower than any previous evaluation he had ever received and did not include any of the favorable observations from Ms. Arnts' original written observations. *Amended Complaint*, at ¶¶ 61-74; and

n.)      In mid-May 2020, counsel for Billman reached out to counsel for EASD to see if EASD had any interest in resolving Billman's discrimination, harassment, and retaliation claims before they were filed in court, but, on May 29, 2020, Pokrivsak again terminated Billman as the head wrestling coach for EASD, allegedly for no reason other than that it was a collective decision by EASD's administration. *Amended Complaint*, at ¶¶ 75-87.

Based on the foregoing, Billman concludes that:

a.)      EASD's failure to provide a reason for Billman's termination demonstrates its discriminatory animus against Billman because he is Black;

b.)      EASD forced Arnts to retract and change her favorable written observations of Billman in an effort to discredit and tarnish his reputation to fabricate a rationale for his termination;

c.)      From the time Billman was hired in 2016 to his second termination in May 2020, EASD engaged in a discriminatory and retaliatory course of conduct against Billman because he is Black;

d.)      EASD continuously failed to apply its policies concerning complaints, threats, safety, protection of employees, investigations, and parent complaints, because Billman is Black and he complained of discriminatory treatment;

e.)     EASD treats White coaches much more favorably than Billman with regard to enforcement of its policies concerning complaints, threats, safety, protection of employees, investigations, and parent complaints;

f.)     Billman's termination was retaliation for reporting Pokrivsak's discriminatory and racially harassing conduct towards him;

g.)     Billman's termination was in retaliation for his filing a Charge with the EEOC and PHRC;

h.)     Billman's termination was retaliation for notifying EASD of his intention to file a federal lawsuit against it; and

i.)     Billman was terminated because he is black and was replaced by a white person.

*Amended Complaint*, at ¶¶ 75-84.

As a result of the foregoing, Billman brings three counts under Title VII and the PHRA against EASD (Counts I-III).  He brings Count I under Title VII and the PHRA for discrimination against Billman, alleging that, as a result of Billman's race, he received less favorable employment terms than similarly situated White coaches and suffered damages as a result of the following discrete adverse employment actions by EASD:

a.)     he was fired in March 2018 and then fired again on May 29, 2020;

b.)     he was not paid a compensation rate based on total years of service as White coaches received;

c.)     he did not receive a years of service increase for the 2019-2020 school year;

d.)     EASD failed to apply or enforce its policies; and

e.)     EASD forced Arnts to retract and change her favorable written performance observations of Billman.

*Amended Complaint*, at ¶¶ 89-93.

He brings Count II under Title VII and the PHRA for harassment against Billman, alleging that, as a result of Billman's race, he was subjected to a hostile work environment rife with racist comments, racist actions, racist discrimination, and retaliation by EASD's administration and Board, contending that the following occurred:

a.)     Billman made multiple complaints to administration and human resources about Pokrivsak's, McIntyre's and Emili's treatment towards him because of his race, to no avail;

b.)     despite multiple reports of threats made by White parents of wrestlers on Billman's team, EASD failed to provide adequate support and safety measures to Billman;

c.)     despite investigations and recommendations, EASD intentionally failed to implement and/or abide by suggested policies recommended to increase transparency and reduce the lack of support for Billman; and

d.)     by failing to implement any policies, EASD permitted Pokrivsak, McIntyre, and Emili's discriminatory conduct towards Billman to continue for over two (2) years.

*Amended Complaint*, at ¶¶ 94-104.

Plaintiff brings Count III under Title VII and the PHRA for retaliation, alleging that Billman made numerous complaints to Pokrivsak, as well as EASD's Human Resources Department, regarding racial discrimination by EASD administrators, that Billman filed a Charge with EEOC and PHRC, and that, in mid-March, 2020, EASD was aware that Billman intended to file a federal lawsuit related to the alleged discriminatory treatment towards him by EASD, which caused EASD: a.) in mid-April 2020, to require administrators to alter Billman's performance review as a basis to terminate his employment; and b.) on May 29, 2020, to

8

terminate Billman's employment without providing any reason. *Amended Complaint*, at ¶¶ 105-115.

Finally, in Count IV, Billman brings a cause of action for alleged violation of 42 U.S.C. § 1981 (through 42 U.S.C. § 1983) (Count IV) related to his employment as wrestling coach with EASD. *Amended Complaint*, at ¶¶ 116-126. Therein, Billman alleges that, as a Black male, he was discriminated against by Defendant EASD because of his race, subjected to a severe and pervasive discriminatory conduct creating a hostile work environment by EASD, and retaliated against by EASD for making complaints of racial discrimination and exercising his right to sue for discriminatory treatment. *Amended Complaint*, at ¶ 121. Billman contends that EASD's conduct violates Billman's federal civil rights "as guaranteed in 42 U.S.C. § 1981." *Amended Complaint*, at ¶ 123.

Under all four counts of the Complaint, Billman requests: "that judgment be entered in his favor and against Defendant EASD and that he receive an award of back pay, front pay, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper." *Amended Complaint*, at pp. 12-16.

## *Argument to Dismiss*

**A.    Portions of Counts I-III for alleged violation of Title VII and PHRA.**

Counts I-III of the Complaint assert violations of Title VII and the PHRA, based upon alleged discrimination, retaliation, and harassment of Billman on the basis of race by EASD and its' employees and representatives. Before filing suit under Title VII and the PHRA, Billman had to timely exhaust each statute's administrative remedies. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 926-927 (3d Cir. 1997); *see also Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (holding, in Title VII case, that a plaintiff must exhaust administrative remedies prior to

bringing suit in court); *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 921 (Pa. 1989) (holding that the intended forum for initially addressing PHRA claims is the PHRC); *Bailey v. Storlazzi*, 729 A.2d 1206, 1214 (Pa. Super. 1999) (holding that a plaintiff must exhaust administrative remedies under PHRA prior to bringing case to court).

The PHRA requires that any administrative complaint be filed within 180 days of the alleged act of discrimination. *See 43 P.S. § 959(h)*. Under Title VII, the relevant term is 300 days. *See 42 U.S.C. § 2000e–5(e)*. Therefore, any events occurring prior to November 1, 2018, are barred from consideration under the Title VII claim, and any events occurring prior to February 28, 2019, may not be considered under the PHRA claim. Any acts that occurred prior to those respective dates are barred from consideration. *Mikula v. Allegheny Cnty. of Pa.*, 583 F.3d 181, 183 (3d Cir. 2009). In other words, if a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA. *Woodson*, 109 F.3d at 925. Pennsylvania courts have strictly interpreted this time requirement, and have repeatedly held that "persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act." *Id.* (citing *Vincent v. Fuller Co.*, 616 A.2d 969, 974 (Pa. 1992)). Likewise, if a plaintiff fails to file a timely complaint with the EEOC, then he or she is precluded from judicial remedies under Title VII. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-110  (2002) (to file a suit under Title VII, a plaintiff must file a charge with the EEOC within 300 days of the complained of action or the suit is time-barred).

The Complaint states that "Billman dual-filed a Charge of Discrimination, No. 530-2019-05703, with the United States Equal Opportunity Employment Commission ('EEOC') and the Pennsylvania Human Relations Commission ('PHRC') on August 28, 2019." *Amended*

*Complaint*, at ¶ 6. Yet Billman makes numerous assertions relating to alleged conduct engaged in by EASD and its personnel that occurred more than 180 days and even more than 300 days before August 28, 2019.

Billman takes issue with allegedly discriminatory behavior stated to have occurred between March 10, 2018 and October 2018. *See Amended Complaint*, at ¶¶ 29-48. That behavior is alleged to have included at least the following alleged discriminatory acts:

a.)     EASD's Athletic Director Pokrivsak failed to ask Billman "if he was okay" and, in fact, Billman's contract was not renewed after an incident in which the grandfather of a wrestler who had been informed by Billman that he had failed to make weight at the PIAA state wrestling tournament, attempted to choke Billman, allegedly stating "I'll kill you ni***r!" *Amended Complaint*, at ¶¶ 29-31, 99;

b.)     On March 14, 2018, EASD's Athletic Director Pokrivsak notified Billman that his contract was not going to be renewed and that he was fired for reasons unrelated to job performance, and EASD Assistant Superintendent Emili attended a "Fire Billman" party but, on March 18, 2018, Billman was told that his contract would be renewed by the Superintendent of EASD. *Amended Complaint*, at ¶¶ 32-36, 91(a);

c.)     investigators within the Human Resources Department of EASD substantiated an unlawful harassment complaint made by Billman against Pokrivsak for comments that allegedly mocked Billman and tarnished his reputation but suggestions made by investigators were never implemented by EASD. *Amended Complaint*, at ¶¶ 38-40;

d.)     Billman was accused by EASD of trying to ruin a charity event put together by Assistant Superintendent, Alyssa Emili, and one of the parents that promoted a wrestling event,

using the team's equipment and name, when he questioned why neither he nor any of his coaches were notified. *Amended Complaint*, at ¶¶ 41-44; and

e.)     On or about September 24, 2018, Billman e-mailed Human Resources expressing concerns that EASD was actively working to undermine him in an effort to discredit him and sabotage the program, expressing concern that nothing had changed regarding Pokrivsak's treatment towards Billman and the wrestling program, and indicating that Pokrivsak failed to respond to Billman's emails, failed to follow guidelines from previous meetings, and failed to complete the wrestling schedule for the upcoming season, but Human Resources and EASD Administration did not change anything. *Amended Complaint*, at ¶¶ 45-48.

180 days before August 28, 2019, is March 1, 2019, and 300 days before August 28, 2019 is November 1, 2018. Therefore, said alleged conduct cannot support either a PHRA claim or Title VII claim, as the challenged conduct is barred by Title VII's and the PHRA's limitation periods. *Clarkson v. SEPTA*, 700 F. App'x 111, 114 (3d Cir. 2017). This Court should dismiss, or in the alternative, strike pursuant to Fed. R. Civ. P. 12(f), all of Billman's allegations set forth in support of Billman's PHRA and Title VII claims contained in paragraphs 29-48, 91(a), and 99 of the Amended Complaint.

*Conclusion*

For all of the foregoing reasons, this Honorable Court should, pursuant to Fed. R. Civ. P. 12(b)(6), dismiss, or in the alternative, strike pursuant to Fed. R. Civ. P. 12(f), all of Billman's allegations set forth in support of Billman's PHRA and Title VII claims contained in paragraphs 29-48, 91(a), and 99 of the Amended Complaint.

Respectfully submitted,
**MARSHALL DENNEHEY**

*Attorneys for Defendant, Easton Area*

*School District*

By:     <u>s/Sharon M. O'Donnell</u>
Sharon M. O' Donnell
Pennsylvania Bar I.D. No.: 79457
100 Corporate Center Drive, Suite 201
Camp Hill, PA  17011
Ph.: (717) 651-3500
Fax: (717) 651-3707
Email: SMODonnell@mdwcg.com

Date:   September 1, 2020.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| **JAMARR BILLMAN,** | : | | |
| **Plaintiff,** | : | | |
| | : | **NO. 20-cv-02730** | |
| **v.** | : | | |
| | : | **JURY TRIAL DEMANDED** | |
| **EASTON AREA SCHOOL DISTRICT,** | : | | |
| **Defendant.** | : | **FILED ELECTRONICALLY** | |

### CERTIFICATE OF SERVICE

I, Sharon M. O'Donnell, Esquire, of Marshall Dennehey Warner Coleman & Goggin, do

hereby certify that on this 2nd day of September, 2020, I served a copy of the foregoing

document, electronically, as follows:

John S. Harrison, Esquire
Erika A. Farkas, Esquire
Broughal & DeVito, LLP
38 West Market Street
Bethlehem, PA  18018

MARSHALL DENNEHEY


BY:    */s/Sharon M. O'Donnell*
Sharon M. O'Donnell, Esquire
PA I.D. No. 79457
100 Corporate Center Dr., Suite 201
Camp Hill, PA  17011
(717) 651-3503  Fax (717) 651-3707
smodonnell@mdwcg.com
*Attorneys for Defendant, Easton Area School*
*District*