IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMARR BILLMAN, | : | |
| Plaintiff, | : | |
| | : | NO. 20-cv-02730 |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| EASTON AREA SCHOOL DISTRICT, | : | |
| Defendant. | : | FILED ELECTRONICALLY |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF RULE 56 MOTION**

The Defendant, Easton Area School District, (EASD), through counsel, MARSHALL DENNEHEY, hereby submits the following Memorandum of Law in support of its Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56, together with the Statement of Undisputed Facts taken from the record produced in this case and requests this Honorable Court to consider and rule in favor of the Defendant and against the Plaintiff on all claims.

I. Procedural History

On June 10, 2020, Plaintiff filed a Complaint under various theories of liability alleging racial discrimination, harassment, and retaliation. [DOC. 1] After completing service, Defendant moved to dismiss portions of the Complaint [DOC 2] and Plaintiff filed an Amended Complaint. [DOC 10] Defendant again moved to dismiss portions of the Amended Complaint [DOC 12.] Plaintiff responded in opposition [DOC 13] and the issues raised in that motion remain pending.

1

Pursuant to the Court's Scheduling Order of June 28, 2020 [DOC 8.], discovery was to be completed on or before December 11, 2020.  By agreement of the parties, discovery was extended through March 3, 2021. The Court's June 28, 2020 Order, sets March 26, 2021, as the deadline for dispositive motions.  The instant motion is therefore timely filed and the issues raised herein are ripe for resolution.

II.   Issues for Resolution:

A.  *Whether Count I of Plaintiff's Amended Complaint, alleging violations of Title VII and the Pennsylvania Human Relations Act in the nature of racial discrimination in the enforcement of its policies and the administration of its employment practices should be dismissed?*

B.   *Whether Count II of Plaintiff's Amended Complaint, alleging violations of Title VII and the PHRA by allowing to exist a hostile work environment and failing to adequately investigation and stop the harassment should be dismissed?*

C.  *Whether Count III of Plaintiff's Amended Complaint, alleging violations of Title VII and the PHRA, for retaliating against Plaintiff for filing charges and making complaints of racial discrimination should be dismissed?*

D.  *Whether Count IV of Plaintiff's Amended Complaint, alleging violations of 42 U.S.C. Section 1981 in the nature of race discrimination, hostile work environment, retaliation, failure to enforce policies, and a denial of equal protection under the 14th Amendment should be dismissed?*

Suggested Answers:  in the affirmative.

III.   Law and Argument

*A.  Count I alleging Title VII and PHRA violations should be dismissed under Rule 56(a)*

It should be noted that the analysis under both Title VII and the PHRA is identical, as courts have construed the protections of the two acts interchangeably. *See*, *Weston v. Pennsylvania*, 251 F.3d 420, 426 n. 3 (3d Cir. 2001). Claims of discrimination are subject to the

burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)("*McDonnell Douglas*"). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. To establish a prima facie case, the plaintiff must prove that (1) she is a member of a protected minority; (2) she was qualified for the position in question; (3) despite her qualifications, she suffered an adverse employment action; and (4) the circumstances give rise to an inference of unlawful discrimination. *See*, *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-411 (3d Cir. 1999).

In order to satisfy the fourth prong, a plaintiff must establish some "causal nexus" between her membership in a protected class and the adverse employment action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). The Third Circuit has recognized several ways to show such a causal nexus. A plaintiff may present evidence that "those exhibiting discriminatory animus influenced or participated in the [adverse employment decision]." *Clair v. Agusta Aerospace Corp.*, 592 F. Supp. 2d 812, 819 (E.D. Pa. 2009)(quoting *Abramson v. William Paterson Coll. of N. J.*, 260 F.3d 265, 285-86 (3d Cir. 2001)). A plaintiff may alternatively present evidence that "similarly situated individuals were treated more favorably." *Campetti v. Career Educ. Corp.*, 2003 U.S. Dist. LEXIS 12202, at *23 (E.D. Pa. June 25, 2003). "Similarly situated employees are ones who have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*, 2003 U.S. Dist. LEXIS 12202, at *24 (internal quotations and citations omitted).

If the plaintiff meets its burden of stating a prima facie case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. "Finally, should the defendant carry this burden, the

plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones*, 198 F.3d at 410.

To make a showing of pretext, the plaintiff must provide evidence "from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To meet this burden, the plaintiff must "present evidence contradicting the core facts put forth by the employer, as the legitimate reasons for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). The plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765. *Fuentes* further requires the plaintiff to present evidence that suggests that the unlawful discrimination alleged was more likely than not a motivating or determining factor in the defendant's adverse employment actions. That is, the plaintiff must do more than show that the defendant's proffered reasons were wrong or mistaken; the plaintiff must demonstrate that the defendant acted with discriminatory animus. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001). The plaintiff can meet this burden by pointing to evidence "that the employer has previously discriminated against [him], that the employer has discriminated against other persons within the plaintiff's protected class or within another class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998). In situations of

4

similarly situated non-class members, a plaintiff must show with some specificity that the comparators were more favorably treated. *Id.*, at 646.

*Plaintiffs have failed to satisfy the McDonnell-Douglas test through speculation.* Plaintiffs have failed to sufficiently establish a genuine issue of material fact regarding the prima facie case of discrimination against EASD under Title VII and the PHRA. Plaintiffs merely believed, speculated, and supposed that they were discriminated against on the basis of race or sex. The record is replete with such speculation unattached to any facts.

Count 1 of Plaintiffs Amended Complaint alleges that Plaintiff suffered adverse employment actions because of his race in the following respects:

> 91a.  He was fired in 2018 and again in 2020;
>
> 91b.  He was not paid a compensation rate based upon total years of service as white coaches received;
>
> 91c.  he did not receive a years of service increase for 2019-2020;
>
> 91d.  Defendant failed to apply or enforce its policies;
>
> 91e.  Defendant forced Elaine Arnts to retract and change her favorable performance observations of Coach Billman.

Clearly, the foregoing allegations set forth no direct evidence of intentional race discrimination. Absent direct evidence of intentional discrimination, courts must use the *McDonnell-Douglas* analytical framework to determine whether or not a genuine issue of material fact exists as to Plaintiff's proffer of circumstantial evidence to prove the requisite degree of racially discriminatory intent to survive summary judgment.   None of the foregoing suppositions are sufficient to create a genuine issue of material fact. Any and all such statements must be disregarded for purposes of Defendants' summary judgment motion. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990); *see also*, *Podobnik v. U.S. Postal Serv.*, 409 F.3d

584, 594 (3d Cir. 2005)("a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue.")(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Here, Plaintiff has taken no deposition testimony or procured any documentary evidence to support or show that any of his allegations in paragraph 91 were motivated because of his race in the following respects.

First, although Plaintiff took testimony on the fact that his contract was non-renewed in 2018, the record evidence shows that he was reinstated within one week. Such being the case, his non-renewal cannot be considered an adverse employment action. The season was over and he lost no wages. Moreover, he cannot show that the District had a racially discriminatory policy in favor of Caucasians with respect to non-renewals of African American coaches because Kerry Myers testified that he had an entire coaching staff fired because they were "lily white" and those coaches were immediately fired, and then subsequently reinstated. Consequently, although Myers' comments and decisions were an attempt to create racial diversity among his coaching staff, the 2018 non-renewal was motivated by the wrestling community's devastation at having its would-be medalist disqualified for weight. That was not a race-based decision. However, by making it a racial issue through the press, the District suffered even greater public pressure to reinstate Plaintiff in 2018. Therefore, a reinstatement within one week of the non-renewal cannot be identified as an adverse employment action.

With respect to his 2020 non-renewal, Jim Pokrivsak testified that Plaintiff had still not improved his relationships with parents of athletes, that student athletes were still leaving, and though his focus on wrestling technique was important, he was just not the right fit. There is nothing in the legitimate reasons given by Pokrivsak for his non-renewal that smacks of racism,

6

and Plaintiff has no proof that these reasons were pretext, because the prior season, the head football coach, Shiffert, who is Caucasian, whom had served for dozens of years with the District in that capacity, was non-renewed with a good performance evaluation. In fact, the testimony was that the evaluation could have been outstanding, but that if the football coach was not willing to change his ways to improve retention of sports talent, the position would be opened. And it was. Although Plaintiff's performance evaluation resulted in a "needs improvement," the improvements needed were articulated in a non- racially discriminatory manner.

Secondly, Plaintiff took testimony on the District's policies with respect to its prohibition of anti-retaliation, anti-discrimination, anti-harassment on the basis of a protected status, together with the complaint process and investigation procedures, none of which show any inkling of differentiation in the manner in which the policies are enforced on the basis of a protected class. This is because the policies do not favor one protected class over another. And Plaintiff has no evidence, otherwise, to support that claim. Nor has Plaintiff procured evidence to show that the policies were enforced in a discriminatory manner. The support given to Plaintiff by many in the District probably weighs against every other coach at the District. Stated differently, the administration gave much more support to Plaintiff than to any other coach regardless of race.

Thirdly, Jim Pokrivsak testified that the compensation disparities claimed by Plaintiff are "easily correctable." The difference was $100 or less. Plaintiff did not raise the issue prior to including it in a lawsuit for race discrimination.

Lastly, the "retraction" made by Elaine Arnts was requested as a teachable moment for an employee who lost her objectivity about this Head Wrestling Coach. The revisions requested were to delete hearsay and opinion comments unrelated to her own direct observations that coincided with others' observations of Billman's performance. There were no retractions or

revisions requested from Mrs. Arnts that had anything to do with racial inequality because Arnts was only put in place by Interim Superintendent D'Angelo for Billman to support his wish not to have direct contact with Pokrivsak.  She was not so employed for any of the other coaches who did not have a request or reason not to have direct contact with Pokrivsak.  She did not supervise any other coaches or provide direct observation evidence for their performance evaluations.  And Plaintiff has no evidence to the contrary because none exists.

Based upon the foregoing, Plaintiff has failed to produce any evidence to show that he suffered an adverse employment action in 2018, that he was treated unfavorably in any manner because of his race, that the District's policy enforcement relating to harassment complaints were unequal or racist, or that his performance evaluation and non-renewal in 2020 were unlawful or discriminatory.  The Defendant, Easton Area School District, requests that Count I of Plaintiff's Amended Complaint be dismissed with prejudice.

*II. Count II of Plaintiff's Amended Complaint Alleging a Race-based Hostile Work Environment Should be Dismissed under Rule 56*

An unlawful hostile work environment, to be actionable, must identify objectively that an employee's workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is severe and pervasive, to alter the conditions of victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).*  If the allegedly hostile work environment is one based on race, a plaintiff must show that (a) he is a member of a protected class; (b) he was subjected to unwelcomed harassment; (c) the harassment was based upon his race; (d) the harassment was severe or pervasive enough to alter the terms of his employment and create a discriminatorily abusive working environment; (e) and that the employer is responsible for the environment through

vicarious liability or direct liability. *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1249 (11th Cir. 2014). The alleged acts of discrimination must be viewed in their totality so that the court can evaluate whether or not the harassment can be determined to be "severe or pervasive" and the objective severity of harassment should be judged by the perspective of a reasonable person in the plaintiff's position considering all of the circumstances. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Courts are directed to evaluate the conduct in context – not as isolated acts – and determine under the totality of circumstances whether the harassing conduct is sufficient severe or pervasive to alter the terms or conditions or the Plaintiff's employment and created a hostile or abusive working environment. *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999).

Here, Plaintiff's Amended Complaint in Count II identifies his supervisor, Jim Pokrivsak, the Assistant Superintendent, Alyssa Emili, and Coach McIntyre as the culprits who harassed the plaintiff for over two years. *Am. Cmplt. ¶101.* Other than the fact that he is African American, and was required to communicate with them by virtue of his employment, Plaintiff has adduced no facts whatsoever that directly or circumstantially tie together their words, actions and his race in a manner which would show an environment that was racially hostile to him. In fact, Plaintiff admitted in his deposition that McIntyre's language, "I have no respect for you" was not related to Plaintiff's race as an African American. In point of fact, Pokrivsak <u>was</u> investigated by the District's representatives, Ms. Piazza and Mr. Cron, at the request of then-Human Resources Director David Hightower, as the result of Plaintiff's complaint that Pokrivsak made a statement at a track event to the effect of "Did you hear that I'm a racist?" in a mocking manner. Although Plaintiff didn't know about this statement except through hearsay because it was not made to him directly, the investigators were able to substantiate that the words were said, but not that the

words were said in a mocking manner.  Clearly, Mr. Pokrivsak did not get the benefit of the doubt in that event even though he has denied saying it to this day and Plaintiff has no evidence that such a statement, if said, was ever repeated.  If it was said, it stopped there.  As for Ms. Emili, she was also investigated in 2018 as heading up a narrative that Billman should be replaced and was admonished for it "more severely" than others.  The fact that she stood firm on a decision to open Plaintiff's position in 2018 mattered not at all since the Superintendent of Schools changed his mind and reinstated Plaintiff to his position within a week.  And the fact that Emili required Elaine Arnts to revise her "performance observations" of Plaintiff had no relationship to his race, but rather to Arnts' gratuitous additions of hearsay and opinion that could not be verified objectively by the Athletic Director or others who may not have shared her personal observations.  The evidence is clear in that regard.  The only connection to the decisions and actions taken by Emili, Pokrivsak and McIntyre is the fact that they communicated with Plaintiff who happens to be an African American; there are no facts that link their words or actions with the intent to harass, intimidate, embarrass or humiliate on the basis of his race.  None whatsoever.

    Pokrivsak's NASCAR t-shirt from 10 years ago is another example of Plaintiff's tedious attempts to link together incongruous facts to claim unlawful racism.  Although Pokrivsak wore the T-shirt once, at the race where he purchased it in Talladega, Alabama, Plaintiff was unaware that he even had it.  Pokrivsak did not wear it to work, never wore in front of Plaintiff, never told Plaintiff he had it, and if it wasn't for a co-worker who posted a picture of 2010 NASCAR race with Pokrivsak wearing the shirt, Plaintiff wouldn't know about it to this day.  Clearly, Pokrivsak owned the shirt; but he has since understood that times have changed and the symbols of rebellion 10 years ago are symbols of emotional injury today.  There is simply no connection

that Pokrivsak's T-shirt was intended to emotionally injure the Plaintiff, his former co-worker, which he purchased and wore once, at a time when Plaintiff was not employed by the District.

Lastly, Plaintiff also identifies Grandfather Miers, Curt Krazer, Coach McIntyre and the Gleason family as harassers.  Except for Grandfather Miers who was admonished and banished from school grounds for a year for using the "N" word towards Plaintiff, there is no connection between the wrestling parents' frustration with Plaintiff's coaching gaffes and his race. Therefore, while the law would certainly place liability on the District for Plaintiff's emotional injuries caused by any racial hostility towards him as an African American that the District negligently allowed, in the totality of these circumstances, there are no racially derisive words or actions that can be attributed to a hostile work environment claim that were not investigated, addressed and stopped.  The perspective of a reasonable person would not include claims of allegedly racist words and behaviors that were not directed to him or that he did not see or hear. Plaintiff's claims in this Count are unreasonable.  The District should not be liable for a racially hostile work environment and Count II should be dismissed.

*Count III – for Retaliation under Title VII and the PHRA*
*Should Be Dismissed under Rule 56*

Federal jurisprudence for unlawful retaliation under the Title VII and the PHRA requires proof that the Plaintiff (a) engaged in protected conduct, (b) that the Defendant was aware of it, that the Defendant (c) took an adverse employment action against Plaintiff and that the action was taken (d) because of the protected conduct.  *Collins v. Kimberly-Clark Pennsylvania, LLC, 247 F.Supp.3d 571 (U.S E.D. Pa. 2017), citing, Univ. of Texas SW Med. Ctr. v Nassar, 570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d. 503 (2013) (creating a "but-for" causation standard.)*

The analytical framework under *McDonnell-Douglas* for assessing Title VII claims of unlawful race discrimination in our federal jurisprudence also requires the Defendant to come forward with an articulated legitimate business reason for the employment decision. Here, Plaintiff has elicited testimony from Jim Pokrivsak that his reasons for the 2020 non-renewal were sanctioned by the school board. Those reasons were limited to Plaintiff's inability to mend broken relationship with student parents, his inability to persuade his student athletes from leaving the District and his focus on wrestling technique instead, which was just not "a good fit for the program." No evidence with respect to his relationships with the disappointed and frustrated parents centers around his race; rather, the evidence clearly points to his performance. Moreover, and more critically, a white football coach, Shiffert, was non-renewed the year before for failing to persuade his student athletes from leaving the District. There is simply no evidence to suggest that opening Plaintiff's position in 2020 was based upon anything other than performance. Regardless of the fact that he filed an EEOC claim, or a lawsuit, and regardless of how many of the administrators knew about it, the evidence of which is not obvious in this case, the facts remain clear that the 2020 non-renewal was performance driven and not retaliatory in nature. Such being the case, Count III of Plaintiff's Amended Complaint should be dismissed.

<u>COUNT IV – for Unlawful Discrimination, Unequal Protection Under U.S.C. Section 1981, 1983 Should be Dismissed under Rule 56</u>

Plaintiff brings a race discrimination claim under Section 1981 against the Defendant for the same conduct described in his Title VII and PHRA claims. As an initial matter, the Third Circuit has determined that Section 1981 provides no independent cause of action against state governmental units, like EASD. *See*, *McGovern v. City of Phila.*, 554 F.3d 114, 121 (3d Cir.

2009). Rather, "the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *McGovern*, 554 F.3d at 121 (quotation and citation omitted). Although EASD may be sued directly under Section 1983 for violations of Section 1981, it cannot be held liable for the acts of its employees under respondeat superior or any other theory of vicarious liability. *Taylor v. SEPTA*, 2007 U.S. Dist. LEXIS 26022, at *5 (E.D. Pa. April 5, 2007)(citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-94 (1987)). EASD, as a government entity, can only be liable for an unconstitutional policy, custom or practice. *Id.* (citing *Monell*, 436 U.S. at 691-92). Thus, in order to survive summary judgment on his Section 1981 claims against EASD, Plaintiff is required to show that EASD "'implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated,' or acted 'pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels.'" *McGovern*, 554 F.3d at 121 (quoting *Monell*, 436 U.S. at 690-91). Plaintiff has offered insufficient evidence in support of such a showing, and thus his Section 1981 claims against EASD must be dismissed. In fact, as shown above, EASD's policies attempted to protect against discrimination and attract persons of color. CSAF, at ¶¶ 55-56, 125, 210-211, 215.

      Nevertheless, Plaintiff's Section 1981 claims against EASD follow the same standards set out for employer liability under Title VII and the PHRA. *See*, *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 597 (M.D. Pa. 2002)("The standards of proof for a section 1981 case are . . . identical to the standards of proof for a Title VII case."); *Verdin v. Weeks Marine*, Inc., 124 Fed. Appx. 92, 97 (3d Cir. 2005)(treating Section 1981 retaliation claim as identical to a Title VII retaliation claim). Thus, the same analysis that applied to Plaintiff's Title VII and PHRA claims

applies here. For the same reasons Plaintiff failed to make out a case of race discrimination under Title VII and the PHRA, his Section 1981 claims must fail.

To the extent that Plaintiff's claims differ from his previous claims in that Plaintiff's attempt to bring a 14th Amendment Equal Protection claim under these counts, pursuant to the Fourteenth Amendment, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV*. Plaintiff appears to claim that the Defendant violated his rights by depriving him of security from angry parents, additional compensation, and his coaching position and by denying him equal protection. It appears that Plaintiff's claims are limited to the equal protection rights encompassed in the Fourteenth Amendment here.

"To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection [under the Fourteenth Amendment], plaintiff must prove the existence of purposeful discrimination." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F. 3d 176, 196 (3d Cir. 2009)(quoting *Andrews v. Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)). Plaintiff must "demonstrate that [he] received different treatment from that received by other individuals similarly situated." *Id.*

Put differently, as stated in *Bradley v. United States*:

> To make out a viable claim for a violation of equal protection rights, a plaintiff must demonstrate purposeful discrimination. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). A plaintiff claiming discrimination on the basis of race and gender[] must show that he or she was treated differently from others who were similarly situated, and that the difference in treatment was due to Plaintiff's race and gender. *See id.*; *Kuhar v. Greensburg-Salem School Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir. 1980). Once a plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the difference in treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Stewart v. Rutgers*, 120 F.3d 426, 432 (3d Cir. 1997) (indicating that Third Circuit law utilizes the McDonnell Douglas standard in equal protection cases); *McHenry v. Pennsylvania State Sys. of Higher Educ.*,

50 F. Supp. 2d 401, 409 (E.D. Pa. 1999). The plaintiff must then rebut that reason as pretextual in order to set forth a viable equal protection claim. *See id.* 164 F. Supp. 2d 437, 445-446 (D.N.J. 2001).

As set forth above, there is no indication that Plaintiff was discriminated against based on his race, and Plaintiff has not come forth with evidence of similarly situated individuals who were treated differently or treated differently due to their race. Therefore, for the same reasons his Title VII and PHRA discrimination claims are insufficient, his Fourteenth Amendment equal protection claims must also fail. *See*, *Terrell v. City of Harrisburg Police Dep't*, 549 F. Supp. 2d 671, 687 (M.D. Pa. 2008)(noting that "the evidence required to prove a protected-class equal protection claim is equivalent to that required for a Title VII disparate treatment case"). Consequently, Defendant's motion for summary judgment on Plaintiff's Section 1983 claims brought pursuant to the Fourteenth Amendment must also be granted.

CONCLUSION

For all of the foregoing reasons, this Honorable Court is requested to enter an Order granting summary judgment on all four counts of Plaintiff's Amended Complaint with prejudice

Respectfully submitted,

MARSHALL DENNEHEY

BY:   */s/ Sharon M. O'Donnell*
Sharon M. O'Donnell, Esq.
Attorney ID #79457
100 Corporate Center Drive
Camp Hill, PA  17011
smodonnell@mdwcg.com
Ph: 717-651-3503  Fax (717) 651-3707

DATE:   March 26, 2021           *Attorneys for Defendant, Easton Area School District*

LEGAL/137078367.v1

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMARR BILLMAN, | : | |
| Plaintiff, | : | |
| | : | NO. 20-cv-02730 |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| EASTON AREA SCHOOL DISTRICT, | : | |
| Defendant. | : | FILED ELECTRONICALLY |

## CERTIFICATE OF SERVICE

I, Sharon M. O'Donnell, Esquire, of Marshall Dennehey Warner Coleman & Goggin, do hereby certify that on this 26th day of March, 2021, I served a copy of the foregoing document, electronically, as follows:

John S. Harrison, Esquire
Erika A. Farkas, Esquire
Broughal & DeVito, LLP
38 West Market Street
Bethlehem, PA  18018

MARSHALL DENNEHEY

BY:   */s/Sharon M. O'Donnell*
Sharon M. O'Donnell, Esquire
PA I.D. No. 79457
100 Corporate Center Dr., Suite 201
Camp Hill, PA  17011
(717) 651-3503  Fax (717) 651-3707
smodonnell@mdwcg.com
*Attorneys for Defendant, Easton Area School District*

16