IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMARR BILLMAN,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **EASTON AREA SCHOOL DISTRICT,** | : | **No. 20-2730** |
| *Defendant* | : | |

### MEMORANDUM

PRATTER, J.                                                                                                                                 APRIL 22, 2021

Easton Area School District ("EASD") moves to dismiss portions of Jamarr Billman's Amended Complaint pursuant to Rule 12(b)(6), or, in the alternative, to strike pursuant to Rule 12(f). Mr. Billman brings several claims against EASD alleging discrimination, retaliation, and a hostile work environment. EASD argues that certain portions of the Amended Complaint describe events that occurred in 2018 and, thus, are time-barred. For the reasons that follow, the Court construes EASD's motion as a motion to strike and denies the motion.

### BACKGROUND

EASD first hired Mr. Billman as its head wrestling coach in June 2016. Doc. No. 10 (Am. Compl.) ¶ 12. Mr. Billman alleges that he was discriminated against because he is black. Specifically, he claims that EASD's Athletic Director James Pokrivsak openly claimed to be a racist, other white coaches were treated more favorably and given larger budgets for their respective teams, and Mr. Billman did not receive a pay increase for the 2019-20 academic year because of his race. *Id.* ¶¶ 15-28.

Mr. Billman also describes events in 2018, including his first termination in March 2018, his subsequent rehiring, and his complaint, reported to EASD's HR office, that EASD was trying to undermine him and that Mr. Pokrivsak continued to express hostility towards him. *Id.* ¶¶ 29-

1

48, 91(a). Additionally, Mr. Billman states that he reported multiple threats that white parents of wrestlers on his team made to him, but EASD failed to provide him with adequate support or safety measures. *Id.* ¶ 99. Mr. Billman brings claims for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. §§ 952 *et seq.* (Count I), harassment/hostile work environment under Title VII and the PHRA (Count II), retaliation under the Title VII and the PHRA (Count III), and violations of 42 U.S.C. §§ 1981, 1983 (Count IV).

EASD asks the Court to dismiss or strike paragraphs 29-48, 91(a), and 99 of the Amended Complaint, arguing that the information contained in these paragraphs is time-barred. While framed as a Rule 12(b)(6) motion to dismiss, EASD does not appear to argue that Mr. Billman has failed to state a claim. Instead, EASD asks the Court to "dismiss portions" of the Amended Complaint and argues that Counts I-III are partially based on events that are time-barred. As such, because the defense seeks to excise certain allegations rather than causes of action, the Court will construe the motion as a motion to strike (which EASD requested in the alternative).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, a complaint needs "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A court must first separate, and then disregard, any legal conclusions from the well-pleaded factual allegations in a complaint and then determine whether the facts alleged state a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)). "A claim has facial plausibility when the

2

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Generally, "[m]otions to strike are not favored and usually will be denied . . . ." *Id.*

## DISCUSSION

EASD moves to dismiss portions of Plaintiff Jamarr Billman's Amended Complaint pursuant to Rule 12(b)(6), or, in the alternative, to strike those portions pursuant to Rule 12(f). As stated, the Court construes the motion as a motion to strike and will deny the motion because the paragraphs EASD seeks to strike from the Amended Complaint contain appropriate background information and provide contextual support for Mr. Billman's hostile work environment claim.

The Pennsylvania Human Relations Act requires an administrative complaint to be filed within 180 days of the alleged act of discrimination. 43 P.S. § 959(h). The relevant term under Title VII of the Civil Rights Act of 1964 is 300 days. 42 U.S.C. § 2000e-5(e). Mr. Billman dual-filed charges of discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission on August 28, 2019. Am. Compl. ¶ 6. As a result, EASD argues that certain portions of the Amended Complaint must be stricken because any events occurring prior to November 1, 2018 are barred from consideration under any Title VII claim, and any events occurring prior to February 28, 2019 cannot be considered under the PHRA.

3

EASD takes issue with Mr. Billman's allegations related to events that occurred in 2018. On March 10, 2018, after a wrestler failed to qualify at a state wrestling tournament, the wrestler's grandfather allegedly attempted to choke Mr. Billman and shouted a racial epithet at him. *Id.* ¶ 29. Mr. Billman immediately reported the incident to Mr. Pokrivsak. *Id.* ¶ 30. Four days later Mr. Billman was notified that his contract would not be renewed and that he was fired. *Id.* ¶ 32. Mr. Billman alleges that on March 16, 2018 there was a "Fire Billman Party," which Alyssa Emili, then an EASD Assistant Superintendent and now the Director of HR, allegedly attended, as did the grandfather referenced above. *Id.* ¶ 34.

A few days later, Mr. Billman was notified by the EASD Superintendent that his contract would actually be renewed. *Id.* ¶ 35. Mr. Billman resumed working as EASD's head wrestling coach. In May 2018, Mr. Billman filed an "Unlawful Harassment complaint" with the EASD HR office. *Id.* ¶ 38. EASD investigated and Mr. Billman alleges that several recommendations were suggested by investigators, none of which were ever implemented, and Mr. Billman alleges he was still treated differently compared to Caucasian coaches. *Id.* ¶¶ 39-41. In September 2018, Mr. Billman emailed HR that Ms. Emili and a parent had promoted a wrestling event using the team's name and equipment without notifying Mr. Billman or any of the other wrestling coaches, a circumstance which he alleges never happened to white coaches. *Id.* ¶¶ 42-48.

Although these 2018 events did occur outside of the statutory time period before Mr. Billman first filed charges with the EEOC or PHRC, the Court will not strike this information from the Amended Complaint. Mr. Billman sufficiently alleges in his Amended Complaint discriminatory conduct that occurred within the required statutory period to support his claims, and EASD does not otherwise argue that Mr. Billman has failed to state a claim or that any counts in his Amended Complaint should be dismissed as time-barred. The prior conduct Mr. Billman

4

describes in his Amended Complaint is background information that provides context for his claims and describes the hostile work environment that he claims he was subjected to over an extended period of time. This is permissible information to include in a complaint.

The Third Circuit Court of Appeals has held that "any claims based on challenged acts that occurred" more than 300 days prior to filing a charge with the EEOC are time-barred. *Mikula v. Allegheny Cty. of Pa.*, 583 F.3d 181, 183 (3d Cir. 2009). The Supreme Court, however, has held that nothing precludes "an employee from using the prior acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Furthermore, when analyzing a hostile work environment claim, the Supreme Court noted that "all of the circumstances" should be considered and, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 116-17.

Here, Mr. Billman alleges conduct in his Amended Complaint that could be considered independently discriminatory from the 2018 events, including the fact that his job was terminated for a second time in May 2020. Additionally, as discussed above, Mr. Billman is allowed to provide information about prior acts as background evidence in support of his timely claims. As to his hostile work environment claim, the "timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened." *Id.* at 117 ("As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has 'occurred,' even if it is still occurring.").

Mr. Billman asserts in his complaint that white parents continued to threaten him in February 2019. *Id.* ¶ 49. Mr. Billman also alleges that various discriminatory acts occurred in 2019 and that, because of his race, EASD failed to provide protection for him and allowed certain

5

parents to attend wrestling matches to intimidate him. *Id.* ¶¶ 50-60. To alleviate his concerns about reporting to Mr. Pokrivsak, EASD did assign Assistant Athletic Director Elaine Arnts to be Mr. Billman's supervisor. *Id.* ¶ 61. In this role, Ms. Arnts reviewed Mr. Billman's performance; Mr. Billman alleges that, from March 2019 until April 2020, he never received any verbal or written warnings concerning his job performance. *Id.* ¶ 62-63.

In mid-March 2020, Mr. Billman received his right to sue letter from the EEOC. *Id.* ¶ 64. In mid-April 2020, Ms. Arnts allegedly issued a favorable report on Mr. Billman's performance to Mr. Pokrivsak but was later informed by Ms. Emili and Mr. Pokrivsak that her report was inaccurate and that she would have to retract her favorable review. *Id.* ¶¶ 65-68. Several days later, Ms. Arnts amended her notes and issued a new report, something that Mr. Billman alleges never occurred with white coaches, with a performance score of 56/96 points—30 points lower than Mr. Billman's last evaluation and substantially lower than any previous evaluation he had received. *Id.* ¶¶ 71-74.

In mid-May 2020, counsel for Mr. Billman reached out to EASD's counsel to possibly resolve Mr. Billman's concerns before a lawsuit was filed. *Id.* ¶ 75. On May 29, 2020, Mr. Pokrivsak terminated Mr. Billman's employment. *Id.* ¶ 76.

The Court is not persuaded that it would be proper to strike any portion of Mr. Billman's Amended Complaint. Furthermore, it would be inappropriate to dismiss any of the claims in the Amended Complaint, especially considering that EASD's motion only asked the Court to dismiss certain paragraphs of the Amended Complaint which contained background information, not to dismiss any claims in Mr. Billman's Amended Complaint. To be sure, any time-barred allegations will be treated as background and not the basis on which Mr. Billman brings his claims. *See Morgan*, 536 U.S. at 113.

## CONCLUSION

For the reasons set forth in this Memorandum, the Court denies Easton Area School District's motion. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE