IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMARR BILLMAN,** *Plaintiff* : | **CIVIL ACTION** |
| v. : | |
| **EASTON AREA SCHOOL DISTRICT,** *Defendant* : | **No. 20-2730** |

## MEMORANDUM

PRATTER, J.                                                                                                                  AUGUST 8, 2022

After the conclusion of trial with a jury verdict in Mr. Billman's favor, the Court considers Mr. Billman's motion for sanctions against the Easton Area School District for failing to produce the final version of a particular document that figured prominently in the case. Although the Court admonishes the District and counsel for lack of respect for discovery duties and diligence, the motion for sanctions is denied in relevant part.

### BACKGROUND

JaMarr Billman brought this action against Easton Area School District alleging racial discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and 42 U.S.C. § 1983. After a trial, the jury found that Mr. Billman had proved each of his claims for racial discrimination, a hostile work environment, and retaliation and awarded Mr. Billman compensatory damages. Mr. Billman also filed a motion for sanctions against the District for failure to produce the final version of a letter reprimanding one of the District administrators who had been involved in Mr. Billman's issues. The existence of the subject letter was disclosed during testimony on the second day of trial.

1

## I.  Role of Reprimand Letter

Mr. Billman's employment as Easton Area School District's varsity wrestling coach began in 2016. On March 14, 2018, Athletic Director James Pokrivsak informed Mr. Billman that his contract would not be renewed for the following year. June 21, 2022 Tr. at 72:14–73:24; June 27, 2022 Tr. at 15:17–19; Ex. P-78. However, the District then reversed this decision and Mr. Billman returned as the varsity wrestling coach for the 2018–19 season. June 21, 2022 Tr. at 76:7–78:7. His employment was later terminated in 2020.

After the District reversed its 2018 decision, Superintendent John Reinhart issued reprimand letters to three District employees involved in the nonrenewal decision: Athletic Director James Pokrivsak, Assistant Superintendent Alyssa Emili, and Principal Kyle Geiger. June 22, 2022 Tr. at 156:13–157:5. At his deposition before trial, Superintendent Reinhart verified that each of the letters produced to Mr. Billman in discovery was the reprimand letter he actually sent to each recipient. *Id.* at 148:4–7.

> The letter to Dr. Emili included the following language not used in the other letters:
>
> Despite all the efforts and emphasis we have placed on equity in Easton's racially and ethnically diverse population, you utterly failed to recognize the impact your differential treatment of the only black coach in the league would have in the public and the negative impression it would create of our school system.

Ex. P-36, at EASD002447. Her letter was dated June 25, 2018, whereas the other letters were dated July 10, 2018. *Compare* Ex. P-36, at EASD002446, *with* Ex. P-78, at EASD003618.

## II.  Use of Reprimand Letter at Trial

On the second day of trial, Mr. Billman called former Superintendent Reinhart to testify as on cross-examination via Zoom. June 22, 2022 Tr. at 142:2–3. Mr. Billman introduced the June 25th reprimand letter to Dr. Emili as Exhibit P-36. During his testimony at trial, Superintendent

2

Reinhart disavowed this letter as only a draft version, rather than the actual final reprimand letter he issued to Dr. Emili:

> Q. Would you do me a favor and look at Exhibit P-36, please.
>
> A. Yes.
>
> Q. Is this a document you prepared?
>
> A. No.
>
> Q. P-36?
>
> A. That's correct.
>
> Q. You did not prepare this document?
>
> A. No. It does not carry my initials and when you sent that to me, that's the first thing that I noticed that my – I didn't initial it and so I started to – I went through my documents and found that, quite honestly, the memo that I sent to the individuals involved, the final draft of that memo was sent on July 10th and that did carry my initials. So I'm not sure where P-36 came from, but the information in it is not the same information that was in the memo I had, July 10th, and signed by Ms. Emili.
>
> Q. During your deposition, did you testify that you sent this document to Ms. Emili?
>
> A. I did because I didn't – it looked very much like the one I sent, but as I said to you, as I looked at it further between my deposition and today, I noticed that my initials aren't on that. And then I looked through my materials and found the document that looks similar, but it has – the one that you sent me has a paragraph inserted in it that I did not compose.
>
> . . .
>
> Q. Would you look at the third paragraph, please? Did you write, "Despite all the efforts and emphasis we have placed on equity in Easton's racially and ethnically diverse population, you utterly failed to recognize the impact your differential treatment of the only black coach in the league would have in the public and the negative impression it will create of our school system."?
>
> A. No, that paragraph, I did not write and that's the paragraph that's inserted in there and I don't know where that came from.

June 22, 2022 Tr. at 147:13–148:12, 151:2–11. Superintendent Reinhart became frustrated with the discrepancy between the documents and made several comments implying wrongdoing. *E.g.*, *id.* at 148:19–21 ("I'm very troubled to see that you ended up with a document that's not supposed to be in her file as it is written."); *id.* at 152:13–14 ("So the question I would ask is where did you

3

get that from because that document is not correct."). He appeared to have a physical copy of what he considered the final version in his possession, but, having been called to testify via "Zoom," he was not physically present in the courtroom.

Mr. Billman then moved for the admission of Exhibit P-36, without objection from the District. *Id.* at 159:18–160:8. Counsel for Mr. Billman called Dr. Emili as his next witness (again, as on cross-examination), and she too testified that the reprimand letter introduced as Exhibit P-36 was not the letter she actually received, despite her prior deposition testimony that it was. *Id.* at 175:13–177:11. During these trial events, counsel for the District remained silent on the subject of the documents mystery.

### III. Investigation into Missing Letter

At the end of the second day of trial, outside the presence of the jury, the Court inquired about the status of the final reprimand letter and whether there was a failure to produce the final version. The Court required the District to provide an officer who could bring Dr. Emili's physical personnel file for the Court's review, speak to the process for searching Dr. Emili's personnel file, and confirm whether a different, final version of the reprimand letter existed. June 22, 2022 Tr. at 209:20–213:6. The following day, the District's current Director of Human Resources, John Burrus, appeared with Dr. Emili's personnel file. The District's counsel claimed that Dr. Emili's official personnel file did not include *any* version of the reprimand letter, but that Dr. Emili provided her own copy of the final version from her personal files at her home that morning. June 23, 2022 Tr. at 2:22–3, 9:16–18. The final copy of the reprimand letter that Dr. Emili's own file contained indeed had Dr. Emili's signature and Mr. Reinhart's initials on it. *Id.* at 23:7–12; Doc. No. 87-1, at ECF 53–54. The District indicated that it would not seek to introduce into evidence

4

the final version of the reprimand letter, which had less self-critical language than Exhibit P-36 had. *Id.* at 26:11–27:8, Doc. No. 93.

During discovery, the District's counsel stated that she had asked Dr. Emili to provide any documents she had related to Mr. Billman's case but did not make this same request of Mr. Reinhart because he had left the employ of the District by the time counsel was asking for case material. June 23, 2022 Tr. at 3:24–4:1, 4:18–5:4. Dr. Emili and Mr. Reinhart each had physical copies of the final letter in their possession, but they did not provide the document to counsel in discovery. *Id.* at 3:1–6. Rather, counsel accepted as sufficient the unsigned June 25th version of Dr. Emili's letter from Mr. Reinhart's secretary's computer and produced this version. *Id.* at 24:24–25:18. Apparently, counsel made no verbal efforts to follow-up with these two participants.

In response to the Court's inquiry, Mr. Burrus explained that the only way a reprimand letter may be removed from an employee's personnel file is if two years have passed with good behavior and the employee requests the removal. *Id.* at 12:2–16. The Court asked Mr. Burrus to investigate whether Dr. Emili had made such a removal request. *Id.* at 14:1–16. The District later represented that there was no record of any request for removal of material from Dr. Emili's file, as indicated in the access log for her file. Doc. No. 87-1, at ECF 21.

On the sixth day of trial, the District called Dr. Emili back as a witness. Outside of the presence of the jury, before her trial testimony, the Court provided an opportunity for Mr. Billman's counsel to cross-examine Dr. Emili regarding the actual reprimand letter. Dr. Emili testified that she left the District on October 1, 2020, but she was asked to produce documents relevant to Mr. Billman's case before she left. June 28, 2022 Tr. at 3:16–25. She testified that she did not produce her copy of the actual reprimand letter because it was in her "personal" personnel

5

file that she kept at home and, apparently not having been told otherwise, she did not consider it part of counsel's request:

> Q. Were you asked to produce any documents before you left?
>
> A. Yes, I produced the documents that were in my own records as far as e-mails and I produced those to Attorney O'Donnell.
>
> Q. Did you not produce the signed reprimand at that point?
>
> A. I did not produce that because that was part of my personnel file and that was just simply my copy that I had.
>
> Q. Were you asked for all documents that you had related to this case?
>
> A. Yes.
>
> Q. Did you inform Ms. O'Donnell at any point that you had a signed copy of the reprimand letter?
>
> A. No, that would be – that was part of my personnel file. So that was simply my copy for my own personal records.
>
> Q. But you were asked for any documents which you had relating to this matter, correct?
>
> A. Correct, and I produced all of those from my laptop.

June 28, 2022 Tr. at 3:23–4:13. When asked by the Court why she suddenly noticed the difference in the two versions at trial but not at her deposition, Dr. Emili testified that "[i]t was a long deposition and I didn't catch it." *Id.* at 10:12–16.

## IV. Motion for Sanctions

On the third day of trial, Mr. Billman filed a motion for sanctions seeking (1) a curative jury instruction and (2) attorney's fees and costs for (A) the depositions of Mr. Reinhart and Dr. Emili and (B) the preparation of the motion for sanctions. The proposed jury instruction read:

> You have heard testimony from John Reinhart about a different version of Exhibit P36. Easton Area School District had an obligation to turn over this version to Mr. Billman prior to trial and it failed to do so. You should not draw any negative inference against Mr. Billman or his counsel for the use of the document that was introduced into evidence as Exhibit P36.

Pl.'s Mot. for Sanctions, Doc. No. 75, at ECF 3. The District did not oppose the first and third sentences of the proposed instruction, but objected to the second sentence. The Court indicated

that the jury instruction could be appropriate without the second sentence since Mr. Billman had not yet conclusively established the District's obligation and failure, but Mr. Billman decided to forego the jury instruction altogether to avoid "drawing attention to" Dr. Reinhart's testimony. June 28, 2022 Tr. at 99:15–101:10. Ultimately, no jury instruction about Exhibit P-36 was provided to the jury. The jury returned a verdict in favor of Mr. Billman on all three of his claims. The portion of the sanctions motion requesting a curative jury instruction is therefore moot.

The Court held a post-trial hearing on the motion for sanctions on July 13, 2022. At the hearing, Mr. Billman narrowed his request to exclude the deposition fees and costs because they would have been necessary regardless of whether the District produced the correct version of the reprimand letter. As such, the request for monetary sanctions related to the depositions is also moot. The sole remaining issue is whether to sanction the District and/or counsel for failure to produce the final version of the reprimand letter in discovery by requiring one of them to pay Mr. Billman's attorney's fees for the time spent researching and drafting the sanctions motion.

### LEGAL STANDARD

Mr. Billman requests discovery sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1). Rule 37(c)(1) provides as follows:

> (1) If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>     (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>     (B) may inform the jury of the party's failure; and
>     (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

Rule 26(e), in turn, requires parties to supplement discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). A sanction should not be awarded if the failure to produce was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## DISCUSSION

The District opposes the motion for sanctions by arguing that its failure to produce the final version of the reprimand was not *not* substantially justified (a double negative the Court construes as a misapplication of the District's burden) and was harmless. The Court finds that the District's failure to produce was not substantially justified but, in this particular instance, was harmless.

## I. The District Has Not Established That its Non-Production Was Substantially Justified

First, the District argues that Mr. Billman has "failed to show that Defendant's failure to locate and produce [the reprimand] was not substantially justified." Def.'s Resp. in Opp'n to Mot. for Sanctions, Doc. No. 87-2, at ECF 1. This improperly flips the burden. It is the District's burden to show that the non-production *was* substantially justified. *Rorrer v. Cleveland Steel Container*, 564 F. App'x 642, 644 (3d Cir. 2014).

For the infringing party to demonstrate that the violation was "substantially justified," they must demonstrate a "genuine dispute concerning compliance." *Id.* at 241. The standard is "whether the withholding of documents was justified 'to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" *Selzer v. Dunkin' Donuts, Inc.*, No. 09-cv-5484, 2015 WL 3668647, at *3 (E.D. Pa. June 15, 2015) (quoting *Kenney v. Trustees of Princeton Univ.*, No. 04-cv-5252, 2007 WL 700874, at *5 (D.N.J. Mar. 1, 2007)). An "honest mistake" involving the non-production of a document

8

that undisputedly should have been produced does not establish a genuine dispute. *Bistrian v. Levi*, No. 08-cv-3010, 2022 WL 888878, at *9 (E.D. Pa. Mar. 25, 2022).

Here, the relevant request for production asked for the personnel file for Dr. Emili. Pl.'s Mot. for Sanctions, Doc. No. 75-2, at ECF 2.[1] However, the version of the personnel file the District produced was incomplete because it did not contain a key document from Dr. Emili's personnel file relevant to this litigation: the reprimand for Mr. Billman's 2018 contract nonrenewal. The District argues that Mr. Billman could and should have noticed that there was a missing version of the reprimand letter because Dr. Emili's letter had a different date than the other reprimand letters. But the District "cannot shift the blame for their production failures to" Mr. Billman or his counsel. *Stream Companies, Inc. v. Windward Advert.*, No. 12-cv-4549, 2013 WL 3761281, at *7 (E.D. Pa. July 17, 2013). The District provides no reason why Mr. Billman's counsel (instead of itself or its own counsel) should have noticed the date difference when its own agents or counsel did not.

The Court finds that this production failure is not substantially justified because it is counsel's duty to ensure complete collection of documents for discovery. It is not enough to leave it merely to the client to properly canvas the likely location of discoverable material. The duty to supplement requires lawyers to act when they learn that their prior "responses are in some material respect incomplete or incorrect." Fed. R. Civ. P. 26 cmt. Lawyers who sign discovery responses must make a "reasonable inquiry" in performing their duties. Fed. R. Civ. P. 26(g)(1). Similarly, the Model Rules of Professional Conduct require lawyers to "act with reasonable diligence." MODEL RULES OF PRO. CONDUCT r. 1.3 (AM. BAR ASS'N 2021). Pennsylvania's version of this Rule does likewise. 204 PA. CODE § 1.3 (2021).

---

[1] Mr. Billman also submitted the underlying discovery requests via fax for the Court's review.

9

Here, the District's counsel did not make a reasonable inquiry or act with reasonable diligence. Upon determining that Dr. Emili's personnel file did not include her reprimand letter, the District did not even ask Dr. Emili about the letter. Instead, the District unilaterally obtained a version from a secretary's computer without verifying whether it was the correct version. This slapdash approach was "utterly inadequate." *See Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 92 (D.N.J. 2006) (finding that the defendant's "process for responding to discovery requests was utterly inadequate" where "it did not disseminate a comprehensive notice to employees who could reasonably be anticipated to possess responsive documents" and instead relied on an in-house paralegal who "generally did not follow up with [employees] to see if they had further responsive documents unless specifically instructed to do so by outside counsel or by [in-house] counsel" and produced documents "without verifying that the searches were sufficient"). This would be an unreasonable approach even for collecting documents of marginal significance, let alone a document that would figure prominently in the case.

Therefore, the District has not shown that its failure to produce was substantially justified.

## II. The District's Failure to Produce Was Harmless

However, the Court considers the District's production failure harmless given its practical effect in this litigation. In evaluating harmlessness under Rule 37(c), the Court considers: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). Although "[m]any sanctions (*e.g.* admonishment and compelling a party to file an affidavit) are liberally ordered by the court,"

awards of attorney's fees are considered "more severe sanctions" requiring a demonstration of bad faith. *Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 552–53 (E.D. Pa. 2010).

"Lack of diligence does not constitute bad faith." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 793 (3d Cir. 1994) (internal quotation marks omitted). There is no indication that the District actually knew about the final version of Dr. Emili's letter before everyone else learned about the discrepancy on the second day of trial or intentionally produced an old version. The Court accepts counsel's eventual representation that Mr. Reinhart's testimony about another version of the letter surprised the District too. June 23, 2022 Tr. at 5:6–8. Additionally, the draft version produced to Mr. Billman actually included language damaging to *the District's* case. This demonstrates a lack of bad faith (normally, a party would not intentionally produce a document version that is more damaging to its own arguments) and a lack of prejudice to Mr. Billman as to the substance of the exhibit he used at trial.

Analysis of the other three factors also weighs against a monetary sanction. Considering the first two factors together, the failure to produce caused surprise during Mr. Reinhart's trial testimony, but the Court afforded Mr. Billman the opportunity to cure any potential prejudice through a jury instruction. Specifically, Mr. Billman argues that Mr. Reinhart's disavowal of Exhibit P-36 disrupted the trial and that a jury unfamiliar with the discovery process could have inferred that Mr. Billman or his counsel was at fault for the incorrect version. However, Mr. Billman could have cured any such prejudice through a jury instruction and chose not to do so, presumably for strategic reasons. For the third factor, the District agreed that it would not introduce the final version of the letter, which aligned with Mr. Billman's preferences. Aside from the initial surprise, the trial continued more or less uninterrupted. Overall, the prejudice to Mr. Billman from the failure to produce was minimal and could have been cured through means that

Mr. Billman chose not to pursue. The harm was, therefore, more to the integrity of the discovery system than to a litigant.

Therefore, applying the four-factor test, the Court finds that the District's failure to produce the final reprimand letter was harmless for this particular, peculiar set of facts. The Court admonishes the District and its counsel for the failure to diligently fulfill their discovery obligations but will not impose a monetary sanction.

## CONCLUSION

For the foregoing reasons, the Court denies in part Mr. Billman's motion for sanctions and deems the remainder moot. An appropriate Order follows.

BY THE COURT:

/s/ Gene E. K. Pratter
**GENE E.K. PRATTER**
UNITED STATES DISTRICT JUDGE